[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case is before this court on defendant Edwin Martinez' Petition to Review Acknowledgment and Vacate Judgment of Paternity, and his Motion for HLA Testing. The matter was referred to the court pursuant to the decision of Family Support Magistrate Katherine Y. Hutchinson dated December 21, 1989.
On June 28, 1978, defendant Martinez signed an Acknowledgment of Paternity of the minor child Miriam Martinez. An Affirmation of Paternity was signed by the child's mother, Anna Delgado. The acknowledgment and affirmation were filed in the Court of Common Pleas on June 30, 1978, (See File Item 100), and have the same force and effect as a judgment of paternity. See Conn. Gen. Stat. sec. 46b-172 (a).
In his petition defendant alleges that at the time he signed the acknowledgment he was incarcerated at the Hartford Community Correctional Center and was not represented by counsel. He further alleges that prior to signing the acknowledgment he was not advised of his right to contest paternity with the assistance of counsel before a jury, nor was he advised of the legal and financial consequences of signing such acknowledgment. Defendant alleges that prior to April 3, 1989, CT Page 284 the date he was served with an order and summons regarding the state's show cause application, no judgment for support of Miriam Martinez was entered or sought against him, and no notice was given to him that the entry of such a judgment might be sought against him. He claims that at no time prior to that date, nor until he consulted his attorneys in this case, was he informed that he could challenge the judgment of paternity or the acknowledgment of paternity on which it was based.
Defendant claims that the entry of any judgment for the support of Miriam Martinez based on his prior acknowledgment of paternity without affording him a reasonable opportunity to challenge the acknowledgment and the judgment of paternity would deprive him of his property without due process of law, and deny him fair access to the courts to litigate his legal rights. Defendant is asking this court to review the written acknowledgment of paternity and vacate the judgment of paternity entered against him on June 30, 1978, and to order blood testing pursuant to Conn. Gen. Stat. sec. 46b-168.
In response to the State's Show Cause application, defendant denies he is the father of Mariam Delgado [Martinez].
Mr. Martinez argues in his Supplemental Memorandum, dated April 2, 1990, that because the State's petition for support filed in April 1989 is the first proceeding for support against him, he has a right to contest the acknowledgment of paternity by way of a response to the state's petition. He further argues that because the acknowledgment he signed in 1978 did not constitute a valid waiver of his rights to a hearing, his denial of paternity puts paternity in issue. Because paternity is in issue, Mr. Martinez argues that he is entitled to HLA or DNA testing pursuant to Conn. Gen. Stat. sec. 46b-168(b).
Mr. Martinez also argues that because the State's petition for support was the first notice he had of the consequences of signing the acknowledgment, he should not be time barred from challenging that acknowledgment even though he is not within the time period allowed by Conn. Gen. Stat. sec. 46b-172(b). As a member of the class in Stone v. Maher, Mr. Martinez argues that "a remedy of which [he] had no notice is not adequate to redress the constitutional infirmities which Stone v. Maher identified." He finally argues that "[u]nder the circumstances of this case, [he] would be denied the guarantee of due process which Stone v. Maher requires, if he were now foreclosed from challenging the paternity acknowledgment."
The State argues that the only remedy available to Mr. Martinez is contained within Conn. Gen. Stat. sec. 46b-172 (b), and since Mr. Martinez has failed to comply with the statute, CT Page 285 he has waived his remedies thereunder.
This case is governed by Conn. Gen. Stat. secs. 46b-172
(rev'd. to 1989) and 46b-168 (rev'd. to 1989), and the case of Stone v. Maher, 537 F. Suppl 10 (D. Conn. 1980). Conn. Gen. Stat. sec 46b-172 (a) provides in part:
 . . . [T]he written acknowledgment of paternity executed by the putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court . . . shall have the same force and effect as a judgment of that court . . . Such written affirmations [and] acknowledgments . . . shall be sworn to, and shall be binding on the person executing the same whether he is an adult or a minor.
Subsection (b) states that in an action the putative father "to show cause . . . why the court or the family support magistrate . . . should not enter judgment for support of the child . . . on the acknowledgment of paternity previously filed" with the court,
 [t]he prior judgment as to paternity shall be res judicata as to that issue and shall not be reconsidered by the court, unless the person seeking review of the acknowledgment petitions the superior court for a hearing on the issue of paternity within three years of such judgment or within three years of October 1, 1982, whichever is later.
Conn. Gen. Stat. sec. 46b-172 (b) (rev'd. to 1989) (emphasis added). If paternity is an issue in any proceeding, the court may order the mother, her child, and the putative father to submit to blood grouping tests to determine whether the putative father can be excluded as being the father of the child. Conn. Gen. Stat. sec. 46b-168 (rev'd. to 1989).
The case of Stone v. Maher, 527 F. Sup. 10 (D. Conn. 3, 1980) addressed the constitutionality of Conn. Gen. Stat. sec.46b-172 prior to the 1981 and 1982 amendments, providing an opportunity to challenge a prior acknowledgment of paternity. The facts of Stone are quite similar to those in this case. In Stone, the plaintiff signed a document entitled "Acknowledgment Paternity". Stone, 527 F. Supp. at 13. He was not accompanied by an attorney at the time. Id. The printed form he signed CT Page 286 was provided by the Connecticut Family Relations office, and did not contain any information regarding Stone's right to counsel, his right to a hearing on the issue of paternity, or any language expressing a waiver of those rights. Id. at 17. At the time of Stone, Conn. Gen. Stat. sec. 46b-172 provided that "the prior judgment as to paternity shall be res judicata as to that issue and shall not be reconsidered by the court. . ." Id. at 16. The court declared the statute "unconstitutional insofar as it provides that in a proceeding to determine a `putative' or alleged father's child support obligations, the alleged father is not permitted to deny his paternity or litigate the issue if he has previously signed a written acknowledgment of paternity and it is accompanied by the mother's written affirmation." Id. at 17.
The court declared the statute "fundamentally deficient" because it did not
 provide for information a putative father of the legal ramifications of signing a written acknowledgment of paternity. The statute does not require the state to inform a putative father of the statutory provision giving a written acknowledgment of paternity the effect of a binding judgment or of the legal consequences that may flow from such a "judgment".
Id. Continuing, the court stated
 A formal hearing before the court, on the other hand, would likely alert a putative father that a judgment of paternity may be entered against him and that serious legal responsibilities will follow from such judgment. Thus, it would be fundamentally unfair for the law to imply a waiver of procedural due process rights merely because a person has signed an uncounseled and possibly coerced written acknowledgment of paternity.
Id. While not intended to automatically alter or affect the paternity status of support obligations of a putative father, the ruling in Stone "merely permits the plaintiff and his class to contest, and litigate for the first time in a judicial proceeding, the issue of paternity by seeking a modification in state court of prior support orders or agreements." Id. at 17 (emphasis added).
In response store, the General Assembly amended Conn. CT Page 287 Gen. Stat. sec. 46b-172(b) to provide that the acknowledgment of paternity will not be res judicata if the person seeking review petitions the court for a new trial. (See Remarks of Senator Owens on H.B. 7254, Senate Proceedings 1981, Vol. 24, pt. 12 at p. 3905). In 1982 the statute was again amended, replacing the option of petitioning for a new trial with the option of petitioning for a hearing on the issue of paternity, in order to make the procedure less cumbersome. (See Remarks of Representative Onorato on H.B. 5047, House Proceedings 1982, Vol. 25, pt. 1 at p. 210). Commenting on the bill (which became P.A. 82-6), Senator Owens said:
 This would say that they would have a right to contest the matter and make the state prove that they are the putative father for whoever the complainant in the paternity action is prove that they are the father in the case provided that it is done within a period of three years after the court imposes support obligations.
Senate Hearings, H.G. 5047, vol. 25, pt. 1 at 264-65.
Although Senator Owens' remarks indicate an intent to allow the putative father three years from the date the court imposes support obligations to contest his acknowledgment of paternity, the statute as written provides that such a challenge must be made within three years of the judgment of paternity or by October 1, 1985. See Conn. Gen. Stat. sec. 46b-172(b).
Where the language used by the legislature is plan and unambiguous, there is no room for statutory construction by the courts and the statute will be applied as its words direct. Kelemen v. Rimrock Corp., 207 Conn. 599, 606-07 (1988). Applying this rule to this case, it would appear that Martinez is not entitled to a hearing on the issue of paternity. However, in applying this rule, under the circumstances of this case, would violate the intent and spirit of Stone v. Maher, and deprive the defendant of the remedy made available to him by the legislature in Public Acts 81-274 and 82-6, that at the time he signed the acknowledgment of paternity, defendant had no notice that such signing would have legal ramifications. Until the State instituted this action, defendant continued to be ignorant of such information.
The State acknowledges that defendant is a part of the class to which Stone v. Maher applies. Such class consists of "`putative fathers who executed a written acknowledgment of paternity pursuant to General Statutes sec. 46b-172 and were never given an opportunity to litigate the issue of paternity.' CT Page 288 (Emphasis added.)" Bleidner v. Searles, 19 Conn. App. 76, 82
(1989) (quoting Perkins v. Perkins, 3 Conn. App. 322, 326
(1985)). "Implicit in a petition for a hearing on the issue of paternity under sec. 46b-172 (b) is that the defendant never had an opportunity to have his day in court on this issue in the first place." Bleidner v. Searles, 19 Conn. App. at 83.
The court concludes defendant has never had his day in court on the issue of paternity, and to deny his petition for review, and impose support obligations, would operate to deprive him of property without due process of law.
The State contends that the issue of paternity is not before the court because it is time barred by subsection (b) of 46b-172 which provides:
 "The prior judgment of paternity shall be res judicata as to that issue and shall NOT be reconsidered by the court unless, the person seeking review petitions the superior court . . . for a hearing on the issue of paternity within three years of such judgment or within three years of October 1, 1982, which ever is later."
Defendants Petition was received in court on August 17, 1989. A few months short of four years after the cut off date provided by statute.
At the hearing on this petition the state presented no evidence that at any time prior to April 3, 1989, the date the defendant was served with an order and summons to appear at a hearing to show cause why this court should not enter a judgment for the support of Miriam Martinez, was any judgment for the support of Miriam Martinez entered or sought against defendant or was respondent given notice that the entry of such a judgment might be sought against him. Thus, eleven years have passed without any effort on the part of the State to enforce its rights and thus put defendant on actual notice of his right to litigate for the first time in a judicial proceeding the issue of paternity.
A paternity judgment under sec. 46b-172 (b) imposes child support obligations permitting a deprivation of the property of the father. Stone v. Maher, 527 F. Sup. 10 at 17 (1980). Such a deprivation requires that the procedure be consistent with due process of law. Stone held that sec.46b-172(b) prior to its amendment in 1981 violates due process insofar as it provided in a proceeding to determine a "putative" or alleged father's child support obligations the alleged CT Page 289 father is not permitted to deny his paternity or litigate the issue if he has previously executed a written acknowledgment of paternity accompanied by the mothers written affirmation. Id. 16.
Stone turned to Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 70 S.Ct. 562, 94 L.Ed. 865 (1950) for guidance as to the minimum requirements of due process and found that "[a]t a minimum they require that deprivation of life, liberty or property by Adjudication be preceded by Notice and opportunity for hearing appropriate to the nature of the case." Id. at 313, 70 S.Ct. 656, 57.
There can be little doubt that sec. 46b-172(b) currently provides and did in fact since 1981 provide defendant with an opportunity for hearing appropriate to the nature of the case. The limitation placed upon an exercise of the right to such a hearing, three years from the time of the filing of the acknowledgment of paternity, sec. 46b-172(b) appears to pass constitutional muster. "There is no absolute due process right that entitles every civil litigant to a hearing on the merits of every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication be they statutes of limitation." Rogers v. Commission on Human Rights and Opportunities, 195 Conn. 543, 548.
The state does not claim in its memorandum that defendant had any actual or constructive notice of the opportunity afforded him by Stone v. Maher to litigate paternity. It maintains that Conn. Gen. Stat. sec. 46b-172(b) as amended by P.A. 82-6 is the only remedy for those members of the class in Stone and that since defendant has failed to comply with the terms of the statute which was in fact a direct response by the General Assembly to the Federal Court's decision in Stone he is subject to the limitations provided in the remedy.
The state further contends that since the defendant waited eleven years to contest a judgment he entered into voluntarily as a matter of public policy the judgment should be final. This argument ignores the holding in Stone that the language of consent, the acknowledgment, does not on its face amount to a waiver express or implied. It also ignores the fact that the state also waited eleven years before attempting to execute on its judgment.
A similar argument resting upon the limitations provided for in another statute, an action for a new trial, Gen. Stat. sec. 52-270 was rejected in the Appellate Session of the Superior Court. Sullivan v. State, 38 Conn. Sup. 534. In Sullivan, the plaintiff executed an acknowledgment of paternity on August 26, 1976. This was filed on September 12, 1976. On CT Page 290 April 23, 1979, the court ordered weekly payments for current support and on account of the arrearage. On January 31, 1980, plaintiff brought an action for a new trial. The state interposed a defense that the action was not brought within three years of the plaintiffs acknowledgment of paternity and was therefore barred by the provisions of Conn. Gen. Stat. sec.52-582. "No petition for a new trial in any civil or criminal proceeding shall be brought but within three years NEXT after the rendition of the judgment or decree complained of." The court found the plaintiff petition missed the statute by three and one-half months but nevertheless interpreted Stone v. Maher to permit a petition for a new trial. Sullivan's petition for a new trial was filed prior to the 81 amendment to Gen. Stat. sec. 46b-172(b) which expressly permitted a petition for a new trial but there can be little doubt that such a petition was implicitly authorized prior to the amendment. The logic of Sullivan applies with equal force to the (current) present limitation in sec. 46b-172 (b). It is ineffective to deprive a member of Stone v. Maher class of an opportunity to contest and litigate for the first time in a judicial proceeding the issue of paternity.
Considering all the circumstances of this case, the court will grant the defendant's motion for HLA testing and also grant defendant's petition to review acknowledgment of his acknowledgment petition.
DONALD T. DORSEY JUDGE, SUPERIOR COURT