## Carol Jane F. Perkins *v.* Roy S. Perkins
### (2855)

Dupont, C.P.J., Borden and Spallone, Js.

Argued December 7, 1984—decision released February 26, 1985

*Harold R. Cummings,* with whom, on the brief, was *Harry D. Weller,* for the appellant (defendant).

*Julie A. Harris,* with whom, on the brief, was *Lawrence L. Connelli,* for the appellee (plaintiff).

*Paul J. Bakulski,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (state).

SPALLONE, J. In this appeal[1] from the denial of a motion to modify a dissolution judgment, the defendant claims that the trial court erred in finding that it lacked jurisdiction to open and modify the judgment on the issue of paternity.

The parties were married on August 7, 1971. Difficulties arose over a period of time and the plaintiff moved out of the marital home in April of 1976. That summer, the plaintiff informed the defendant that she was pregnant and that he might not be the father. Because of the plaintiff's emotional instability and in an effort not to alarm her parents, the defendant acted as though the child were his. Shortly after the child was born, the plaintiff brought an action for dissolution. The defendant did not contest the action in any way.

In rendering judgment on February 15, 1978, the trial court ordered, inter alia, that the plaintiff would have custody of the child and that the defendant would pay child support of $30 per week. On May 23, 1980, the court ordered, on motion by the plaintiff, that the child support be increased to $40 per week. The issue of the paternity of the child was not denied by the defendant during the original dissolution action[2] or raised in the subsequent modification proceeding.

On October 6, 1981, the defendant filed a motion for modification alleging that he had been led to believe during his marriage to the plaintiff that he was the father of the child and that, subsequent to the judgment of dissolution, he was advised by the plaintiff that this was not so. He also claimed that in the spring of 1981 blood tests were conducted which indicated that the child was not his. He alleged that if he had known

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

[2] In her substituted complaint, the plaintiff alleged in paragraph four that "[t]here is one minor child issue of that marriage, Seth Ryan Perkins, born March 7, 1977."

this fact at the time of the dissolution, he would not have agreed to an uncontested finding that he was the father of the child. He thus requested that the court "reopen and modify" the judgment of dissolution and vacate all orders for the support of the child for which he was liable. After a hearing, the trial court denied the motion on the ground that it had no jurisdiction to open the judgment on the issue of paternity.

On appeal, the defendant argues that General Statutes §§ 46b-86[3] and 46b-174[4] provide jurisdiction for the court to open the judgment, and relies on *Stone* v. *Maher*, 527 F. Sup. 10 (D. Conn. 1980), to support his position. He claims that he, like the plaintiff in *Stone* v. *Maher*, supra, never actually litigated the question of paternity and that the denial of his motion for modification consequently violated his due process rights.

In *Stone* v. *Maher*, supra, the plaintiff (hereinafter Stone) challenged the constitutionality of General Statutes § 46b-172, which provides a procedure by which paternity may be acknowledged by filing.[5] The acknowl-

---

[3] General Statutes § 46b-86 provides in part that "(a) [u]nless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law."

[4] General Statutes § 46b-174 provides that "[t]he superior court shall have jurisdiction to enforce and modify all paternity orders and paternity support agreements issued by or filed with the court of common pleas or circuit court prior to or after October 1, 1963, and existing on July 1, 1978."

[5] At the time *Stone* v. *Maher*, 527 F. Sup. 10 (D. Conn. 1980), arose, General Statutes (Rev. to 1979) § 46b-172 provided as follows: "(a) In lieu of or in conclusion of proceedings under section 46b-160, the written acknowledgment of paternity executed by the putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court for the geographical area in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court; and an

edgment which Stone signed and filed was a printed form supplied by the Connecticut family relations office containing blank spaces for the names and addresses of the mother, child and acknowledging person. The form provided neither information regarding the acknowledging person's right to counsel or to a hearing on the issue of paternity, nor any language expressing a waiver of such rights. When Stone signed the

agreement to support the child by payment of a weekly sum until the child attains the age of eighteen years, together with provisions for reimbursement for lying-in expense, accrued maintenance and reasonable expense of prosecution of the petition, when filed with, and approved by a judge of, said court, at any time, shall have the same force and effect, retroactively or prospectively in accordance with the terms of said agreement, as an order of support entered by that court, and shall be enforceable and subject to modification in the same manner as is provided by law for orders of the court in such cases. Payments under such agreement shall be made through the family relations office of the superior court. Such written affirmations, acknowledgments and agreements to support shall be sworn to, and shall be binding on the person executing the same whether he is an adult or a minor. Such mother shall not be excused from making such affirmation on the ground that it may tend to disgrace or incriminate her; nor shall she thereafter be prosecuted for any criminal act involved in the conception of the child as to whose paternity she makes affirmation.

"(b) At any time after the filing with the court of any acknowledgment of paternity, upon the application of any interested party, the court or any judge thereof shall cause a summons, signed by him or by the clerk or assistant clerk of said court, to be issued, requiring the putative father to appear in court at a time and place named therein, to show cause, if any he has, why the court should not enter judgment for support of the child by payment of a weekly sum until the child attains the age of eighteen years, together with provision for reimbursement for lying-in expense, accrued maintenance and reasonable expense of the action under this subsection on the acknowledgement of paternity previously filed with said court. The prior judgment as to paternity shall be res judicata as to that issue and shall not be reconsidered by the court. All such payments shall be made through the family relations office of the superior court."

Subsection (b) of General Statutes § 46b-172 was subsequently amended to provide that "[t]he prior judgment as to paternity shall be res judicata as to that issue and shall not be reconsidered by the court, unless the person seeking review of the acknowledgment petitions the superior court for the geographical area having venue for a hearing on the issue of paternity within three years of such judgment or within three years of [October 1, 1982], whichever is later." Public Acts 1982, No. 82-6.

form, he had no attorney present. The court found that General Statutes § 46b-172 was "fundamentally deficient because it fails to provide for informing a putative father of the legal ramifications of signing a written acknowledgement of paternity." Id., 17. It thus permitted "the plaintiff and his class to contest, and litigate for the first time in a judicial proceeding, the issue of paternity by seeking a modification in state court of prior support orders or agreements"; id.; and, in such proceedings, "to assert his nonpaternity as a basis for modifying or vacating a prior support order or agreement . . . ." Id., 18.

The class to which the ruling of *Stone* v. *Maher*, supra, applies is clearly that of putative fathers who executed a written acknowledgment of paternity pursuant to General Statutes § 46b-172 and were never given an opportunity to litigate the issue of paternity.[6] We therefore find that *Stone* v. *Maher*, supra, is inapplicable to this case, where the defendant, who was represented by counsel, appeared and participated in a judicial proceeding in which his status as father of the minor child was raised and adjudicated. He could have litigated the question of his paternity, but he chose not to. Since the defendant was represented by counsel and elected not to contest the issue of paternity, we may reasonably assume that he, unlike the plaintiff in *Stone* v. *Maher*, supra, was aware of the consequences of his decision. See *Vogel* v. *Vogel*, 178 Conn. 358, 363, 422 A.2d 271 (1979).

---

[6] In *State* v. *Carter*, 3 Conn. App. 235, 486 A.2d 1138 (1984), we held that the granting of a petition for a hearing under General Statutes § 46b-172 (b), as amended, is not an appealable final judgment. In examining the legislative history of the amendment, we found that such a petition is intended to provide " 'a hearing on the issue of paternity alone . . . [to] give this particular defendant his day in court.' " *State* v. *Carter*, supra, 238. Implicitly, any defendant who would so petition never had his day in court on that issue in the first place.

"If the paternity of a child is placed in issue in an action for a divorce and is adjudicated, the matter is res judicata as between the husband and wife in any subsequent action or proceeding . . . ." 24 Am. Jur. 2d 1084, Divorce and Separation § 1099. Whether the issue "was actually litigated is immaterial in view of the necessary conclusion that there was full opportunity to litigate it and that it was adjudicated by the decree." *Jackson* v. *Irving Trust Co.,* 311 U.S. 494, 503, 61 S. Ct. 326, 85 L. Ed. 297 (1941). The continuing jurisdiction of the superior court to set aside, alter or modify support orders pursuant to General Statutes § 46b-86 does not deprive the underlying adjudication of finality for purposes of res judicata. See 1 Restatement (Second), Judgments § 13.

The underlying adjudication that the child was the issue of the marriage between the parties triggered the application of General Statutes § 46b-84 (formerly Sec. 46-57), which authorizes the court to determine the parents' obligation for maintenance of that child.[7] It is the degree and extent of this obligation that may be modi-

---

[7] General Statutes § 46b-84 provides: "(a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. (b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. . . . (d) After the granting of a decree annulling or dissolving the marriage or ordering a legal separation, and upon complaint or motion with order and summons made to the superior court by either parent or by the commissioner of administrative services in any case arising under subsection (a) of this section, the court shall inquire into the child's need of maintenance and the respective abilities of the parents to supply maintenance. The court shall make and enforce the decree for the maintenance of the child as it considers just, and may direct security to be given therefor . . . ."

fied under the continuing jurisdiction of the court, not the factual finding that the child is the issue of the marriage. The trial court was correct in finding that the underlying issue of the defendant's paternity fell beyond its continuing jurisdiction to modify orders of support.

We note that Practice Book § 326 provides that a civil judgment may be opened or set aside where a motion to do so is filed within four months from the date of its rendition, "[u]nless otherwise provided by law and except in such cases in which the court has continuing jurisdiction . . . ." Since the portion of the judgment which the defendant sought to alter was not one over which the court had continuing jurisdiction, the defendant's motion was subject to the four month limitation for filing motions to open. Practice Book § 326; *Bunche* v. *Bunche,* 180 Conn. 285, 288, 249 A.2d 874 (1980).

"Under § 326, the parties may waive the time requirements or otherwise submit themselves to the jurisdiction of the court. Absent waiver, consent or other submission to jurisdiction, however, a court is without jurisdiction to modify or correct a judgment, in other than clerical respects, after the expiration of the term of the court in which it was rendered; *Snow* v. *Calise,* 174 Conn. 567, 571, 392 A.2d 440 (1978); or the term provided in Practice Book, 1978, § 326." Id. The defendant's motion to modify was not filed within the applicable period for opening judgments and the parties did not submit themselves to the jurisdiction of the court by waiver, consent or otherwise.[8]

There is no error.

In this opinion the other judges concurred.

[8] We further note that the defendant could have petitioned for a new trial; General Statutes § 52-270; within three years after the rendition of the dissolution decree. General Statutes § 52-582. He did not.