[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant father has filed a pro se motion to open and dismiss the paternity judgment. The State of Connecticut, which brought the original petition, opposes the motion. Attorney Michael Burton appeared pursuant to his previous appointment as counsel and guardian ad litem for the minor child. A trial-like CT Page 12794 evidential hearing was held on July 6, 1999.
The plaintiff mother, Tiffany M., gave birth to a child, Dure C. D. on November 9, 1994. On April 13, 1995 the State commenced a paternity petition pursuant to General Statutes § 46b-162. The petition was served at the defendant's usual place of abode in Hartford on May 23, 1995. When the matter first appeared on the docket the plaintiff appeared but the defendant did not. At the request of the State, the court, Ginsberg, F.S.M., entered default judgment of paternity, a support order and an arrearage finding.
Subsequently, the State endeavored to serve a notice of default judgment on the defendant as provided by statute[1]. Although the Assistant Attorney General certified that service of the notice was accomplished by certified mail, it is obvious from visual inspection of the postal return receipt (the so-called "green card") that it was signed by someone other than the defendant. There is no evidence that the required notice form was ever served on Mr. D.
It is clear, however, that eventually the defendant had actual notice of the support order. In June, 1996, he filed a motion to modify the support order. In August, 1996, the motion was granted by the court, Trombley, F.S.M., and the order was reduced. The present motion was filed in March, 1999 and served at the abode of Ms. M. on April 2, 1999.
At the hearing, the defendant offered a report of the results of DNA testing by LabCorp, an accredited genetic testing laboratory. The report was admitted into evidence with no objection. The report, dated July 24, 1998, indicated that Mr. D. was biologically excluded as Dure's father under four separate DNA systems. This test was not court ordered. Apparently, during one of his attempts to seek an opening of the judgment, the defendant was told by the court that it was too late for the Family Support Magistrate to order genetic tests, but that the parties could go on their own[2]. Apparently this was done with the plaintiff's cooperation.
The present motion was not filed until three and one half years after the judgment. During the hearing, this court was initially skeptical of the defendant's failure to file the motion timely. The defendant claimed he had been attempting to open the judgment since 1995 or 1996. While no motions appear in the file CT Page 12795 at that time, the file does reveal several attempts commencing in January, 1997, which failed for procedural reasons. The defendant appeared pro se in August, 1996. Throughout these proceedings he has acted pro se without counsel.
 I
The Attorney General opposes the motion. There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment. There is the direct out-of-pocket cost of any past or future public assistance paid on behalf of Dure. If the judgment is opened and the defendant is found not to be Dure's father, the State will be required to refund any money it collected through the support order. General Statutes § 46b-171(b). Liability for past due support against any subsequently named putative father is limited to three years prior to the commencement of the new paternity case. The State will be unlikely to recoup the difference. It may be difficult after the passage of so much time, to even located the true biological father placing at risk whether a subsequent support order can be established. In addition to its own direct fiscal interest, the State has a public policy interest in ensuring proper financial support for minor children.
 II
The plaintiff, Tiffany M. appeared pro se at the evidential hearing. She denies having deliberately misled the defendant and the court, insisting that at the original paternity trial she was sure that Walter D. actually was Dure's father. At the original paternity trial she testified that during the conception period she had sexual intercourse exclusively with the defendant[3]. She now states that she had commenced another relationship during the possible time of conception. In explaining her erroneous testimony at the paternity trial, she states that the doctor "assumed" that she was pregnant in February, 1994, before she started her subsequent relationship, and that she failed to disclose that relationship "[b]ecause they didn't state those months."[4]
At present, Ms. M. states that Dure considers the defendant to be his father. Since the DNA tests were done, however, Mr. D. has reduced his contact with Dure and she describes the father-son relationship as "gone". Accordingly, she has "no problem" with the judgment being opened[5]. CT Page 12796
 III
"It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion."Pullen v. Cox, 9 S.M.D. 134, 145 (1995). In that case, as in this one, a recent DNA test confirmed that the defendant was not the biological father.
One month later, in a similar situation, Judge Dranginis opened a nine year old dissolution judgment for DNA testing. "This court has ruled that the right of the child to a conclusive determination of paternity supersedes the need for finality of judgments, and the ease with which a confirming test of paternity can now be determined, requires a conclusive finding of paternity. This child has been told that there is doubt as to her paternity. The child has a right to know for sure whether or not the defendant in this case, who she has known as her father, is indeed her father. Her property rights are at interest here, and the ability of the parties to ascertain their responsibilities conclusively, so as to further minimize conflict over such a delicate issue, is of primary concern for the long-term well-being of this child. When a debate over paternity occurs post-judgement [sic], and there is evidence of sexual infidelity which creates a doubt as to paternity, it is incumbent upon the parents to use scientific evidence to conclude the debate, and have closure for the family." Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (October 21, 1998)[6].
In recognition of Dure's independent interest, the court appointed Attorney Michael Burton as counsel and guardian ad litem for the child. He participated fully in these proceedings. Attorney Burton stated that prior to genetic testing "there was clearly a very strong relationship in which Mr. D. would visit Dure and treated him like a son." He confirmed that more recently "the relationship has tapered off a bit." T 7/6/99, at 17. Attorney Burton declined to make a definitive recommendation on the issue. He expressed concern that "if Mr. D. is let's say compelled to . . . [be] the father of the child, I don't believe that Mr. D. is going to exercise his parental rights with Dure in terms of visitation. . . . [At] four years old I don't know whether or not we have sufficient bonds. I don't know whether or not we're going to have a harmful effect." T 7/6/99 at 19-20. CT Page 12797
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R.,234 Conn. 194, 209, 662 A.2d 107 (1995). Support is one of the "best interest" considerations the court must consider. Id., 210-12; In Interest of K. J. K., 396 N.W.2d 370, 371-72 (Iowa App. 1986); In Interest of A. B., 151 Wis.2d 312, 322,444 N.W.2d 415 (Wis.App. 1989). "It is in the child's best interest that the man who encouraged a loving paternal relationship with the child and who received the benefits of the child's love and affection not escape the concomitant obligation of support."Pietros v. Pietros, 638 A.2d 545, 548 (R.I. 1994); Pullen v. Cox, 9 S.M.D. 134, 149 (1995).
 IV
Our courts favor finality in judicial decisions. Meinket v.Levinson, 193 Conn. 110, 113, 414 A.2d 454 (1984); Vogel v.Vogel, 178 Conn. 358, 362, 422 A.2d 271 (1979); Perkins v.Perkins, 3 Conn. App. 322, 328, 487 A.2d 1117 (1985); Yade v.Nagy, 4 S.M.D. 237 (1990); State of Florida v. Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . ." Lampson Lumber Co. v. Hoer, 139 Conn. 294,297, 93 A.2d 143 (1952); Pullen v. Cox, 9 S.M.D. 134, 137 (1995).
Notwithstanding the inclination for finality, a judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129,131, 429 A.2d 837 (1980); Gatling v. Gatling, Superior Court, judicial district of Waterbury, doc. no. 52272 (Aug. 9, 1990,Harrigan, J.); Cardona v. Negron, 13 S.M.D. ___ (1999).
The moving party bears a heavy burden of proof. "Fraud must be proven by `clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Gatling, supra; see also Alaimo v. Royer, 188 Conn. 36, 39, 448 A.2d 207
(1982). The standard is also phrased "clear, precise and unequivocal evidence." Connell v. Connell, 214 Conn. 242,571 A.2d 116 (1990); Alaimo, supra, 39; Lopinto v. Haines,185 Conn. 527, 534, 441 A.2d 151 (1981); DeLuca v. C. W. Blakeslee Sons,Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978); T.O. RichardsonCo. v. Brockbank, Superior Court, judicial district of CT Page 12798 Hartford/New Britain at Hartford, doc. no. 703826 (March 23, 1995, Sheldon, J.); Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Millerv. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981); Paiva v.Vanech Heights Construction Co., 159 Conn. 512, 515, 271 A.2d 69
(1970); Barnes v. Starr, 64 Conn. 136, 1250, 28 A. 980 (1894);Gatling, supra; Pullen v. Cox, supra, 9 S.M.D. 138. Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540-42; 36 Ill.L.Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4,428 A.2d 317 (1980); Pullen v. Cox, supra, 138.
In Smith v. Brown, Superior Court, judicial district of Waterbury, doc. no. 80340 (June 16, 1993, Harrigan, J.) the original trial court found that the defendant had access to the plaintiff at the possible time of conception; no other man was named as candidate putative father; the plaintiff mother had been constant in her accusation; and the defendant usually assumed the role as father to the child. Even though paternity tests introduced at the original trial showed a very high probability that the defendant was not the father[7], the court found the remaining evidence overwhelming and found the defendant to be the father of the child. No appeal was taken from this judgment. A motion to open the paternity judgment was filed more than six years later based on an alleged fraudulent concealment by the mother of sexual intercourse with another man. The court held that the defendant failed to meet his burden of proof in providing clear and convincing proof of fraud. The motion was denied. CT Page 12799
This Family Support Magistrate has held that the mere fact of a contradictory genetic test is insufficient to require opening of the judgment. Where the court found credible the mother's claim to have believed that the defendant was the true father when she signed an affirmation of paternity and still could not name an alternative putative father, the court held that the defendant failed to prove fraud by "clear, precise and unequivocal evidence." Pullen v. Cox, supra, 9 S.M.D. 139.
In the present case the first element of fraud is proven: Ms. M. made a false representation at trial by asserting an exclusive relationship with the defendant. However, the colloquy at the original trial (see footnote 1) confirms the plaintiff's claims that neither the Assistant Attorney General nor the court were very specific regarding dates. Comparing that transcript with Ms. M.'s testimony at the more recent hearing, this court can not find by clear and convincing evidence that she knew her statements to be untrue when she made them, or that there was any intent on her part to induce a response by the defendant. The simple truth is that she believed that Mr. D. was Dure's father. Her testimony was inaccurate but not fraudulent. Therefore, the court can not find fraud as a basis to open the judgment.
 V
Fraud is not the exclusive ground available to provide the court jurisdiction to open the judgment after the expiration of four months[8]. "The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident or mistake." Yeong Gil Kim v.Magnotta, 49 Conn. App. 203, 209, 714 A.2d 38 (1998); Solomon v.Keiser, 22 Conn. App. 424, 577 A.2d 1103 (1990); McDonnell v.McDonnell, Superior Court, judicial district of Hartford, doc. No. FA94-0535761 (February 2, 1999, Bishop, J.). Some courts have recognized a slightly differing standard in opening a judgment entered by consent compared to those resulting from adjudication.Gillis v. Gillis, 214 Conn. 336, 572 A.2d 323 (1990). In the case of stipulated judgments, contract principles pertinent to reformation are sometimes invoked. Reformation may be applicable due to mutual mistake or a unilateral mistake coupled with fraud or inequitable conduct. Rodie v. National Surety Corporation,143 Conn. 66, 69, 118 A.2d 908 (1955); Shawmut Bank Connecticut v.Connecticut Limousine Service, Inc., 40 Conn. App. 268, 273,670 A.2d 880 (1996); City Iron Works, Inc. v. Frank Badsteubner PostCT Page 12800No. 2090, 22 Conn. Sup. 230, 167 A.2d 462 (1960).
Mutual mistake has been held to exist where both parties are mutually mistaken about the same material fact. Buol Machine Co.v. Buckens, 146 Conn. 639, 641, 153 A.2d 826 (1959); DaintyRubbish service, Inc. v. Beacon Hill Association, Inc.,32 Conn. App. 530, 537, 630 A.2d 115 (1993); see also Harlach v.Metropolitan Property Liability Ins. Co., 221 Conn. 185, 190,602 A.2d 1007 (1992). Yet in other instances, courts have held that although a party moving to open a judgment must "demonstrate that there is a good and compelling reason for the court to grant the motion . . ." the applicable statutes and practice rules ". . . [do] not contain a precise list of what the moving party must show in order to prevail. . . ." First Union National v. TDB International, 22 Conn.L.Rptr. 252 (1998). A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court, acting reasonably would feel . . . bound in duty to do so." McCulloch v.Pittsburgh Plate Glass Co., 107 Conn. 164, 167, 140 A. 114
(1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224 (1899). This court concludes from its review of cases that there is no bright line standard as to what constitutes a "mistake" sufficient to confer jurisdiction on a court to open a judgment after four months.
The General Assembly recently amended the paternity acknowledgment statute to preclude review of a filed acknowledgment after sixty days or upon entry of a support order. The section provides that after this period of time the acknowledgment "may be challenged in court or before a Family Support Magistrate . . . only on the basis of fraud, duress or material mistake of fact which may include evidence that he is not the father. . . ." Public Acts, Special Session June 18, 1997, No. 97-7, § 23 now codified in General Statutes §46b-172(a)(2).
Unlike the foregoing provision relating to paternity acknowledgments, there is no specific statute relating to opening an adjudicated paternity. A movant must rely on General Statutes § 52-212 and 212a. However, the court finds the language of the public act instructive in determining what constitutes a "mistake". The statute includes "evidence that he is not the father" as a "material mistake of fact". The court observes that there is no requirement of "mutual mistake". The material mistake can be mutual or unilateral. Secondly, it is significant that the CT Page 12801 clause is preceded by the word "may". Thus the amendment still does not create a bright line standard but merely allows the court to consider evidence of non-paternity among other factors.
 VI
The opportunity to litigate the issue of paternity was the key element in several cases in which an opening of a paternity acknowledgment or judgment was denied. In Bleidner v. Searles,19 Conn. App. 76, 561 A.2d 954 (1989), the Appellate Court affirmed the dismissal of a petition for a new trial. The original action was a paternity petition, which resulted in a stipulated judgment. Thereafter, an acknowledgment was filed. The child was just over three years old when Bleidner filed his petition. The court held that Bleidner did not have an absolute right to be reheard, and that he chose to waive his right to have his case heard on the merits by stipulating to judgment. Bleidner had been represented by counsel, was presumed to be aware of the consequences of his decision, and had the opportunity to litigate the issue of paternity. The court held that dismissal of the petition by the trial court was proper.
A similar result was reached in Perkins v. Perkins,3 Conn. App. 322, 487 A.2d 1117 (1985). The parties were married. Although the child was born during the marriage, the wife told the husband the child might not be his. The husband nonetheless acted as though the child were his. He did not deny paternity in the subsequent dissolution action, or a later modification. some three and one-half years after the dissolution judgment, he filed a motion to open and modify the judgment as to paternity, basing his claim, in part, upon a recent blood test showing the child not to be his. Id., 323. The motion was denied by the trial court, Covello, J. The Appellate Court affirmed, finding that the husband "could have litigated the question of his paternity, but chose not to." Id., 326. "Whether the issue `was actually litigated is immaterial in view of the necessary conclusion that there was full opportunity to litigate it and that it was adjudicated by the decree.' Jackson v. Irving Trust Co.,311 U.S. 494, 503, 61 S.Ct. 326, 85 L.Ed. 297 (1941)." Perkins, supra, 327.
Where a putative father signed the information and waiver form and acknowledged paternity, and then participated in subsequent court proceedings, the court found he had been "afforded ample opportunity to be heard in this case." Even CT Page 12802 though the petition for review was filed within the three year limitation period, the court denied the request to open the judgment. Pagani v. Davis, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 602649 (July 18, 1991,Kaplan, J.).
In Pullen v. Cox, 9 S.M.D. 134 (1995), decided by this Family Support Magistrate, a motion to open a paternity acknowledgment was denied notwithstanding a genetic test that excluded the defendant. Prior opportunity to litigate was a significant factor. The court found that the defendant had enjoyed "ample opportunity" to be heard. "At the very least, the defendant has been an active and continuing participant in this litigation, had the benefit of counsel for a significant portion of the proceedings, and had ample opportunity to raise the paternity issue, if he so chose, within the statutory time, and incidentally at a time less prejudicial to the State and [the child]." Id., 144. See also Angelus v. Angelus,20 Conn.L.Rptr. 252 (1997).
A different result was reached in Shelby v. Shelby,13 Conn.L.Rptr. 130 (1994). The court found that the father never had developed a relationship with the child, had been incarcerated for most of the child's life, and "[t]he only way the child knows him as a father is because the mother tells the child so." Shelby never held himself out to be the father of the child. The child's attorney in Shelby was of the opinion that it was not in the child's interest to continue the relationship. The court refused to equitably estop the husband from denying paternity of the child in question[9].
In Delgado v. Martinez, 25 Conn. App. 155, 593 A.2d 518 (1991) the court found that the defendant never had any advisement of his rights, or the consequences of an acknowledgment. After the acknowledgment was signed, the defendant heard nothing further for over ten years. When the State then moved to obtain a support order and an arrearage, the defendant moved to open the judgment. He was not precluded from doing so notwithstanding the significant passage of time.
 VII
This court is not pursuaded that the interest of a minor child in determining his parentage categorically trumps traditional concern for finality of judgment, as suggested in CT Page 12803Johnson v. Domina, Superior Court, Judicial District of Hartford, doc. No. FA88-0340848, 1998 Ct. Sup. 11005 (Sep. 24, 1998). Nor is it convinced that evidence of non-paternity even as strong as an exclusionary DNA test always proves a material mistake sufficient to open a paternity judgment. The court is pursuaded that these are issues the court must weight and consider in determining the motion presently before the court.
There is clear and convincing evidence that the defendant is not the biological father of Dure D. The genetic test results provide the strongest possible evidence in this regard. The court is also convinced that at the time of the default judgment, the plaintiff believed the defendant was Dure's father. The court previously found that all of the elements of fraud were lacking. However, there was clearly a material mistake of fact in that at least the mother, if not both parties, sincerely but mistakenly believed the defendant to be the father.
The defendant is not precluded by estoppel, laches or waiver from opening the paternity judgment at this time. Cardona v.Negron, 13 S.M.D. ___ (1999). The failure of the State to provide notice to the defendant of the original judgment coupled with the court's determination that the defendant began his efforts to open the judgment in 1995 or 1996 proscribes a finding of unreasonable delay[10]. The court also finds Mr. D. not precluded by prior opportunity to litigate. Unlike the cases cited supra, this defendant did not have counsel, but rather acted pro se throughout the litigation. He did not participate in extensive proceedings prior to commencing his efforts to open the judgment. He did, during the intervening time, act as a father to Dure. Such acts may suggest an admission and also may weigh on the best interests of the child, particularly in determining the extent of bonding. However, it has been held that fathering the child, including voluntary support, should be encouraged as a matter of public policy, hence should not be the basis for estoppel. J.C. v. G.C., 21 Conn.L.Rptr. 255 (1998).
In Pullen v. Cox, supra, a deciding factor was the strong argument of the child's attorney against opening the paternity. In Shelby, the opposite position of the child's attorney was a factor in obtaining the opposite result. Because the attorney for the child is the only person whose sole concern is the best interest of the child, such attorney's opinion is afforded great deference. In this case, the attorney for the child is ambivolent. While finding some degree of bonding between Dure and CT Page 12804 Mr. D., the attorney suggests that the relationship has "tapered off".
The plaintiff mother does not oppose the opening of the paternity judgment. She clearly stated her opinion that the relationship between Mr. D. and Dure is "gone". She did not appear concerned over any lasting harmful effect to Dure of disclosing that the defendant is not his father.
Significantly, Ms. M. appears to be prepared to attempt to seek and establish paternity of the true biological father. She is prepared to name another candidate. T 7/6/99 at 26. This contrasts with Pullen v. Cox where the court found that no other candidate was likely to be named. If the judgment against Cox were opened, the child was likely to be rendered permanently fatherless. In the present case there is at least a chance that the true biological father will be adjudicated to be Dure's father. Even though Dure will lose child support from Mr. D., if the State and/or plaintiff proceed expeditiously, paternity can be established and support obtained from the true father without too significant a gap.
This case is certainly a close call. Under the fact matrix of this case, the court holds that Dure's interest in ascertaining his true parentage and the correction of a material mistake of fact outweigh the court's interest in finality of judgment and concern regarding the fading bonding Dure may have with the defendant unknowing or that there was any deprivation of due process.
 VIII
Accordingly, the motion to open the judgment is granted. The paternity judgment is opened and vacated. At the hearing, all parties stipulated that sufficient facts were in the record for the court to procede to a new judgment without further evidential hearing. Based on the testimony of the parties and the genetic test excluding the defendant the court finds that the defendant is not Dure's father. Judgment is entered for the defendant. The support order is vacated. In accordance with General Statutes § 46b-171(b), the Department of Social Services is hereby ordered to refund to the defendant any money paid to the State pursuant to the prior judgment.
BY THE COURT CT Page 12805
Harris T. Lifshitz Family Support Magistrate