[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In June 1994, the State of Connecticut commenced a paternity petition against the defendant pursuant to General Statutes § 46b-162. The first named plaintiff, Sherrel L. White is the mother of Quinton Marqon White, born January 30, 1992. Quinton's parentage was the initial substantive issue to be determined.
The petition was served on the defendant at his abode in the Town of Hartford on June 25, 1994. Both parties appeared in court on the initial date and filed pro se appearances. The defendant filed an answer denying paternity and moved for genetic test pursuant to General Statutes § 46b-168. The motion was granted by the court, Steele, F.S.M, who ordered the defendant to schedule and pay for the tests on or before September 23, 1994. The case was continued to September 27, 1994 for verification with a subsequent trial date on November 8, 1994. CT Page 6487
On September 27 both parties presented themselves to the court. The Family Support Magistrate was informed that notwithstanding the orders, the defendant had failed to pay for the genetic tests. A short colloquy ensued. The defendant claimed that he didn't have the money to pay for the test. The assistant attorney general questioned the defendant resulting in testimony that he was holding three jobs at the time. Thereupon the court, Forman, F.S.M., refused to continue the case further and directed the parties to "[p]roceed to trial." Transcript (hereinafter "T"), 9/27/94, pp. 1-2.
The plaintiff testified that she had sexual relations with the defendant during the time that Quinton was conceived which she believed to be late June 1991. She admitted to having sexual relations with another individual, but maintained that this occurred after she had already conceived. She stated that she had "no doubts" that Brett Cordier was Quinton's father. She reiterated her willingness to submit to DNA testing. T, 9/27/94, pp. 3-5.
The defendant admitted that he had a six to seven year relationship with the plaintiff. He conceded that he had sexual relations with the plaintiff in May 1991 and possibly in June. However, he claimed that "at the time of her getting pregnant [the plaintiff] was dating two people at the same time and that's a fact. That is a proven fact. His name is Duane." He insisted "that boy don't look nothing like me." He offered no evidence or witnesses other than his own testimony. T, 9/27/94, pp. 7-10. At the conclusion of the testimony, the court entered judgment that the defendant was the father of Quinton White. The case was then continued to October 18 when support orders were entered.
The present motion to open the judgment was filed pro se by the defendant on November 1, 1999. The grounds stated in the motion are: "Sherrel While knowingly perjured herself and committed fraud by alleging my paternity of Quinton White." The court appointed Attorney Robert J. Romano as guardian ad liter for the minor child. On February 3 a fully contested hearing was conducted before the undersigned. Attorney James P. Grace represented the defendant.
The plaintiff mother and the Attorney General oppose the motion. "There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment." McNealy v. Dancy, 13 S.M.D. 113, 115, 1999 Ct. Sup. 12793 (1999). The State has incurred direct out-of-pocket cost of public assistance paid on behalf of Quinton. If the judgment is opened the State will be required to refund any money it collected through the support order. General Statutes § 46b-172 (c). Liability for past due support against any subsequently named putative father is limited to three years prior to the commencement of the new CT Page 6488 paternity case. In addition to its own direct fiscal interest, Connecticut "evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995).
 I
The defendant offered into evidence a report entitled DNA Parentage Test Report prepared by DNA Diagnostics Center of Fairfield, Ohio. The court admitted the test results over the objections of the State and the plaintiff, but indicated it would consider the objections as to weight[1].
The test results purport to show a biological exclusion, indicating a 0% chance that the defendant is the biological father of Quinton. This test was not pursuant to court order but was arranged by the defendant during a visitation with Quintin. Only the defendant and the child were tested.
The DNA test does not comply with our statutory requirements. General Statutes § 46b-168 provides for court-ordered DNA testing when "the question of paternity is at issue"[2]. Our Appellate Court has held that where a paternity judgment exists or filed acknowledgment which has the legal effect of a judgment the court lacks the authority to order genetic tests unless the judgment is first opened. Cardona v. Negron,53 Conn. App. 152, 157, 728 A.2d 1150 (1999). Where the court properly orders a DNA test and there is an allegation of requisite sexual contact between the parties it is admissible in evidence without further foundation or proof of authenticity or accuracy. The Department of Social Services is also authorized to "require" DNA tests, which are similarly admissible. General Statutes § 46b-168a[3].
A genetic test arranged privately without a court order or under the auspices of the IV-D agency is not precluded from evidence. However, none of the statutory presumptions attach. There is no presumption of accuracy or of authenticity or that the results themselves presume any conclusion. General Statutes § 46b-168a speaks of testing "the child and all other parties". While § 46b-168 does not include this language it is certainly the prevailing practice that the child, the putative father and the mother are all tested. Here the defendant offers DNA results wherein only he and the child were sampled.
This court does not suggest that the DNA results are precluded or disregarded because the mother was not tested. In fact our courts have been receptive when necessary to alternatives within the context of DNA tests. Lach v. Welch, 11 Conn.L.Rptr., 9 CSCR 701, 1994 Ct. Sup. 6566
(Dranginis, J., June 13, 1994), appeal dismissed (for want of a final CT Page 6489 judgment) 247 Conn. 439, 721 A.2d 1194 (1998); Taylor v. Martin, 14 S.M.D. ___, 26 Conn.L.Rptr. 404 (2000). However, where an unconventional test is offered, the mere filing of the report without foundation is inadequate.
The full eleven page report, including identify and consent forms was admitted. One page purports to explain the testing process and results. However, the only portion of the explanation that specifically addresses testing without the mother's DNA is a statement in the first paragraph: "If the mother is not tested, the child's DNA patterns will be compared to the alleged father's DNA pattern." No one from the testing laboratory or other expert was called to support the accuracy or explain the methodology. The plaintiff and the State were deprived of any opportunity to cross-examine or to make a searching inquiry into the underlying scientific basis. It was clear that the plaintiff mother did not accept the results of the test[4]. Without proper foundation and supporting evidence, this court can not accord more than minimal weight to the test results.
 II
Our courts favor finality in judicial decisions. Meinket v. Levinson,193 Conn. 110, 113, 414 A.2d 454 (1984); Vogel v. Vogel, 178 Conn. 358,362, 422 A.2d 271 (1979); Perkins v. Perkins, 3 Conn. App. 322, 328,487 A.2d 1117 (1985); Yade v. Nagy, 4 S.M.D. 237 (1990); State of Florida v.Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . ."Lampson Lumber Co. v. Hoer, 139 Conn. 294, 297, 93 A.2d 143 (1952);Pullen v. Cox, 9 S.M.D. 134, 137 (1995).
Notwithstanding the inclination for finality, a judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837
(1980); Gatling v. Gatling, Superior Court, judicial district of Waterbury, doc. no. 52272 (Aug. 9, 1990, Harrigan, J.); McNealy v. Dancy, 13 S.M.D. 113, 119, 1999 Ct. Sup. 12793 (1999).
The moving party bears a heavy burden of proof. "Fraud must be proven by `clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Gatling, supra; see also Alaimo v.Royer, 188 Conn. 36, 39, 448 A.2d 207 (1982). The standard is also phrased "clear, precise and unequivocal evidence." Connell v. Colwell,214 Conn. 242, 571 A.2d 116 (1990); Alaimo, supra, 39; Lopinto v. Haines,185 Conn. 527, 534, 441 A.2d 151 (1981); DeLuca v. C.W. Blakeslee Sons,Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978); T.O. Richardson Co. v.CT Page 6490Brockbank, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 703826 (March 23, 1995, Sheldon, J.); Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby, 183 Conn. 51, 54-55,438 A.2d 811 (1981); Paiva v. Vanech Heights Construction Co.,159 Conn. 512, 515, 271 A.2d 69 (1970); Barnes v. Starr, 64 Conn. 136,1250, 28 A. 980 (1894); Gatling, supra; Pullen v. Cox, supra, 9 S.M.D. 138.
Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540-42; 36 Ill.L.Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317
(1980); McNealy v. Dancy, supra, 13 S.M.D. 120; Pullen v. Cox, supra, 138.
The mere fact of a contradictory genetic test is insufficient to require opening of the judgment. Where the court found credible the mother's claim to have believed that the defendant was the true father when she signed an affirmation of paternity, the court held that the defendant failed to prove fraud by "clear, precise and unequivocal evidence." Pullen v. Cox, supra, 9 S.M.D. 139.
In the present case the defendant has failed to prove by clear and convincing evidence that the plaintiff made a false statement at the initial trial. The plaintiff candidly admitted that she had sexual intercourse with another individual. She believed this occurred after she conceived Quintin. There is nothing to suggest a fraudulent statement or that the plaintiff knew her testimony to be untrue. In fact, the plaintiff still believes that her original testimony was true[5]. T, 2/3/2000, 27. It is also clear from the testimony that there was no attempt to induce the defendant. The plaintiff never objected to genetic tests, and confirmed at trial that she was willing to undergo DNA tests. CT Page 6491 T, 9/27/94, 4-5. Nor did the defendant rely on the plaintiff's statements: he vehemently questioned the timing of the sexual acts as stated by the plaintiff, his claim that the plaintiff's other paramour fathered the child and claimed absence of physical resemblance. T, 9/27/94, 8-12. The original trial court had all these issues on the table when the judgment was entered. There was no fraud.
Even if fraud were proven, the defendant would be barred from opening the judgment because of his lack of diligence at the original trial. It was apparent at the trial that the defendant doubted that he was Quintin's father. Although he filed for genetic test, he failed to pay the costs in advance, as required, or to schedule the tests. The transcript demonstrates that the court considered and rejected his plea that he couldn't pay the costs. The file does not disclose a formal fee waiver application nor does the transcript indicate a request for a continuance to obtain more time to set aside the money. Furthermore, the trial court did not revoke the DNA order. Nothing precluded the defendant from setting up the tests after the trial. Yet he did not do so. Nor did he interpose any defense at trial other than his own denial.
 III
The defendant's pro se motion alleges fraud as the only basis for his motion. However, fraud is not the only ground available to provide the court jurisdiction to open the judgment after the expiration of four months[6]. Even though not raised in the motion the court has considered whether the judgment should be opened on grounds of mistake. "The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident or mistake." Yeong Gil Kim v. Magnotta, 49 Conn. App. 203, 209, 714 A.2d 38
(1998); Solomon v. Keiser, 22 Conn. App. 424, 577 A.2d 1103 (1990);McDonnell v. McDonnell, Superior Court, judicial district of Hartford, doc. No. FA94-0535761 (February 2, 1999, Bishop, J.). Some courts have recognized a slightly differing standard in opening a judgment entered by consent compared to those resulting from adjudication. Gillis v. Gillis,214 Conn. 336, 572 A.2d 323 (1990). In the case of stipulated judgments, contract principles pertinent to reformation are sometimes invoked. Reformation may be applicable due to mutual mistake or a unilateral mistake coupled with fraud or inequitable conduct. Rodie v. NationalSurely Corporation, 143 Conn. 66, 69, 118 A.2d 908 (1955); Shawmut BankConnecticut v. Connecticut Limousine Service, Inc., 40 Conn. App. 268,273, 670 A.2d 880 (1996); City Iron Works, Inc. v. Frank Badsteubner PostNo. 2090, 22 Conn. Sup. 230, 167 A.2d 462 (1960).
Mutual mistake has been held to exist where both parties are mutually CT Page 6492 mistaken about the same material fact. Buol Machine Co. v. Buckens,146 Conn. 639, 641, 153 A.2d 826 (1959); Dainty Rubbish service, Inc. v.Beacon Hill Association, Inc., 32 Conn. App. 530, 537, 630 A.2d 115
(1993); see also Harlach v. Metropolitan Property Liability Ins. Co.,221 Conn. 185, 190, 602 A.2d 1007 (1992). Yet in other instances, courts have held that although a party moving to open a judgment must "demonstrate that there is a good and compelling reason for the court to grant the motion . . ." the applicable statutes and practice rules ". . . [do] not contain a precise list of what the moving party must show in order to prevail. . . ." First Union National v. TDB International,22 Conn.L.Rptr. 252 (1998). A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court, acting reasonably would feel . . . bound in duty to do so." McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164,167, 140 A. 114 (1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224
(1899). "There is no bright line standard as to what constitutes a "mistake" sufficient to confer jurisdiction on a court to open a judgment after four months." McNealy v. Dancy, 13 S.M.D. 113, 122,1999 Ct. Sup. 12793 (1999).
The paternity acknowledgment statute precludes review of a filed acknowledgment after sixty days or upon entry of a support order. The section provides that after this period of time the acknowledgment "may be challenged in court or before a Family Support Magistrate . . . only on the basis of fraud, duress or material mistake of fact which may include evidence that he is not the father. . . ." General Statutes §46b-172 (a)(2). Unlike the foregoing provision relating to paternity acknowledgments, there is no specific statute relating to opening an adjudicated paternity. Thus the defendant must rely on General Statutes § 52-212a. However, the court finds the language of the paternity acknowledgment act instructive in determining what constitutes a "mistake". The statute includes "evidence that he is not the father" as a "material mistake of fact". The court observes that there is no requirement of "mutual mistake". The material mistake can be mutual or unilateral. Secondly, it is significant that the clause is preceded by the word "may". Thus the amendment still does not create a bright line standard but merely allows the court to consider evidence of non-paternity among other factors.
It is difficult to consider what happened at the initial trial in this case to fall under the rubric of "mistake". The defendant's lack of diligence at trial is also a factor on the issue of mistake. The facts were all before the trial court. DNA testing had been ordered. if there was a mistake it was caused by the defendant's failure to avail himself of the DNA test timely or even within four months after trial. The court does not find mistake to be an appropriate basis to open this judgment. CT Page 6493
 IV
The present motion was filed more than five years after the judgment. The file indicates a substantial amount of activity subsequent to the paternity judgment. In January 1995 the defendant filed a pro se motion to modify the support order, which was granted after a hearing. Subsequently he filed at least three additional motions to modify and has been cited for contempt for failure to comply with the support order numerous times. The present motion is the first motion to open the paternity judgment.
In Pullen v. Cox, 9 S.M.D. 134 (1995), decided by this Family Support Magistrate, a motion to open a paternity acknowledgment was denied notwithstanding a genetic test that excluded the defendant. Prior opportunity to litigate was a significant factor. The court found that the defendant had enjoyed "ample opportunity" to be heard. "At the very least, the defendant has been an active and continuing participant in this litigation, had the benefit of counsel for a significant portion of the proceedings, and had ample opportunity to raise the paternity issue, if he so chose, within the statutory time, and incidentally at a time less prejudicial to the State and [the child]." Id., 144. See also Angelus v.Angelus, 20 Conn.L.Rptr. 252 (1997).
A similar result was reached in Perkins v. Perkins, 3 Conn. App. 322,487 A.2d 1117 (1985). The parties were married. Although the child was born during the marriage, the wife told the husband the child might not be his. The husband nonetheless acted as though the child were his. He did not deny paternity in the subsequent dissolution action, or a later modification. Some three and one-half years after the dissolution judgment, he filed a motion to open and modify the judgment as to paternity, basing his claim, in part, upon a recent blood test showing the child not to be his. Id., 323. The motion was denied by the trial court,Covello, J. The Appellate Court affirmed, finding that the husband "could have litigated the question of his paternity, but chose not to." Id., 326. "Whether the issue `was actually litigated is immaterial in view of the necessary conclusion that there was full opportunity to litigate it and that it was adjudicated by the decree.' Jackson v. Irving Trust Co.,311 U.S. 494, 503, 61 S.Ct. 326, 85 L.Ed. 297 (1941)." Perkins, supra, 327.
Where a putative father signed the information and waiver form and acknowledged paternity, and then participated in subsequent court proceedings, the court found he had been "afforded ample opportunity to be heard in this case." Even though the petition for review was filed within the three year limitation period, the court denied the request to open the judgment. Pagani v. Davis, Superior Court, judicial district of CT Page 6494 Hartford/New Britain at Hartford, doc. no. 602649 (July 18, 1991, Kaplan,J.). See also Bleidner v. Searles, 19 Conn. App. 76, 561 A.2d 954 (1989).
In the present case it is apparent that the defendant had ample opportunity to move to open the judgment within the four month statutory period, or during a reasonable period thereafter during which the bonding issue would have carried less weight. He did not exercise reasonable diligence in pursuing such opportunities.
 V
"It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion." Pullen v.Cox, 9 S.M.D. 134, 145 (1995). Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R., 234 Conn. 209-210; Nye v. Marcus, 198 Conn. 138,502 A.2d 869 (1985); Guille v. Guille, 196 Conn. 260, 492 A.2d 175 (1985);Salvio v. Salvio, 186 Conn. 311, 441 A.2d 190 (1982); Yontef v. Yontef,185 Conn. 275, 440 A.2d 899 (1981). Our Supreme Court has held that minor children even may appeal an order regarding their own support in the absence of a guardian ad litem, if the trial court finds that it is in their best interests to do so. Newman v. Newman, 235 Conn. 82, 663 A.2d 980
(1995).
More recently courts have included the very right of the child to knowledge of his parentage among the factors to be weighed in opening a judgment. In Johnson v. Domina, Superior Court, Judicial District of Hartford, doc. No. FA88-0340848, 1998 Ct. Sup. 11005 (Sep. 24, 1998) the court, Dranginis, J., held "that the right of the child to knowledge and establishment of paternity supercedes any interest the court might have in preserving a judgment entered by default, and where clear and convincing evidence of fraud on the court is present. . . . This child's interest in preserving rights which grow from the biological father must take precedence even over a ten year old judgment of the court."
One month later, in a similar situation, Judge Dranginis opened a nine year old dissolution judgment for DNA testing. "This court has ruled that the right of the child to a conclusive determination of paternity supersedes the need for finality of judgments, and the ease with which a confirming test of paternity can now be determined, requires a conclusive finding of paternity. This child has been told that there is doubt as to her paternity. The child has a right to know for sure whether or not the defendant in this case, who she has known as her father, is indeed her father. Her property rights are at interest here, and the ability of the parties to ascertain their responsibilities conclusively, so as to further minimize conflict over such a delicate issue, is of primary CT Page 6495 concern for the long-term well-being of this child. When a debate over paternity occurs post-judgment (sic), and there is evidence of sexual infidelity which creates a doubt as to paternity, it is incumbent upon the parents to use scientific evidence to conclude the debate, and have closure for the family." Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (October 21, 1998)[7].
It has also been held that a child's "interest in establishing paternity is a fundamental state and federal constitutional liberty interest [which] the judicial system must afford the child an opportunity to exercise and protect. . . ." Andrews-White v. Mitchell,15 Conn.L.Rptr. 629,1995 Ct. Sup. 12880 (McWeeny, J., Nov. 13, 1995); Taylor v. Martin, 14 S.M.D. ___, 26 Conn.L.Rptr. 404 (2000).
This court is not pursuaded that the interest of a minor child in determining his parentage categorically trumps traditional concern for finality of judgment. Nor is it convinced that evidence of non-paternity even as strong as an exclusionary DNA test always proves a material mistake sufficient to open a paternity judgment. The court is pursuaded that these are issues the court must weigh and consider in determining the motion presently before the court.
In this regard the court would place substantial weight on the opinion of the child's counsel and guardian ad liter. Unfortunately, through an apparent error in notice, counsel was not present during the hearing on this motion. The court did provide him with all transcripts, exhibits and records. However, he reported to the court that both parties failed to keep appointments for interviews. Therefore, he did not have an opportunity to meet with Quintin or engage in any meaningful discussion with either parent. Although the court delayed until the last minute to allow for filing of a report, none was filed.
Therefore, the court must rely on the testimony at the hearing. Both parties acknowledge that the defendant and Quintin have a father/son relationship. T, 2/3/2000, 31-34, 42-43. To his credit, the defendant has pledged continued interest in Quintin: "I'm gonna say this, no matter which way it swings, I'm always gonna care about Quintin. And, no matter which way it goes I'm still willing to help Sherrel. And I mean that." T, 2/3/2000, 48.
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the best interest considerations CT Page 6496 the court must consider. Id., 210-12; In Interest of K.J.K., 396 N.W.2d 370,371-72 (Iowa App. 1986); In Interest of A.B., 151 Wis.2d 312, 322,444 N.W.2d 415 (Wis.App. 1989). "It is in the child's best interest that the man who encouraged a loving paternal relationship with the child and who received the benefits of the child's love and affection not escape the concomitant obligation of support." Pietros v. Pietros,638 A.2d 545, 548 (R.I. 1994); Pullen v. Cox, 9 S.M.D. 134, 149 (1995).
There was no evidence at the hearing from which the court could judge whether or not there is any possibility of establishing paternity for Dwayne Boyd. Quintin is now eight years old. He considers the defendant to be his father although he apparently has some indication about these proceedings. The court has no doubt that to sever the father/son relationship with the defendant at this time would be traumatic and harmful to Quintin. The question is whether that would be offset by the benefits of establishing his "real" father. The evidence presently available suggests it more likely that he would be relegated to a lengthy or possibly permanent fatherless future.
There are no villains in this case. Both parties appeared as credible, sincere and concerned at the hearing. The plaintiff was and is candid about her sexual encounter with Mr. Boyd, but continues to believe that the defendant is Quintin's father. The defendant was not convinced from the first day that he was. While his child support payment record is not steller, he has paid significant amounts and, just as importantly, has been a father figure to Quintin, who by all accounts is a nice youngster. Had the DNA test been completed when ordered, this child and these two parents would not now have to deal with this very difficult situation. But this court can not undo what happened six years ago and substitute what could have or should have happened.
It is not in Quintin's best interest to disrupt the relationship with the only father he has known. It is also not in his best interest to terminate one side of the child support equation, or to cast him adrift at age eight on the mere possibility that his father will be replaced. After the defendant neglected numerous opportunities to resolve the issue when it would have been far less traumatic to Quintin, this court holds that it is too late now.
For the reasons stated, the motion to open the judgment pursuant to General Statutes § 52-212a and Practice Book § 17-4 is hereby denied.
BY THE COURT CT Page 6497
 Harris T. Lifshitz Family Support Magistrate