[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The State of Connecticut commenced this paternity petition against the defendant pursuant to General Statutes § 46b-162. The first named plaintiff, Irca Cruz is the mother of Monika L. Hudson, born October 15, 1996. The petition was served on the defendant at his abode in the Town of Hartford on January 4, 1997. Both parties appeared in court and filed pro se appearances.
On March 4, 1997 the defendant filed an answer denying paternity and moved for genetic test pursuant to General Statutes § 46b-168. The motion was granted by the court, Matasavage, F.S.M., who ordered the defendant to schedule and pay for the tests on or before March 21, 1997. The case was continued to March 25, 1997 for verification with a subsequent trial date on May 6, 1997. The defendant failed to pay for the genetic tests but the court granted an extension to June 3, 1997 and rescheduled the trial for July 15, 1997. On that date the plaintiff was absent causing the court, Matasavaqe, F.S.M., to order a subpoena. Trial was rescheduled for August 12, 1997.
The defendant did not present himself to the court on August 12 nor had he paid for the DNA test. The plaintiff was present and the State went forward with its evidence. At the conclusion of the hearing Family Support Magistrate Matasavage adjudged the defendant to be Monika's CT Page 4028 father. The case was then continued once again, to September 9, 1997 to set financial orders. On September 9, the defendant was again absent. The court ordered him to pay $51.00 per week child support plus $10.00 per week on the arrearage.
There was no further court activity until March, 2001 when the defendant filed a new appearance and attempted to file a motion to open the paternity judgment. That motion was dismissed by the undersigned on April 17, 2001 because the original motion had not been returned to court. The defendant immediately filed another motion to open which was duly served on the plaintiff and returned to court. Attorney Sally Hodgdon was appointed as attorney and guardian ad litem for the child Monika. The motion was continued to the special assignment list. Both parties appeared and a full contested hearing was held.
The defendant's motion states: "I have reason to believe child is not mine." The basis of this claim is his allegation that the plaintiff stated that Monika was not his one to two months after she was born. The plaintiff admits that such a conversation took place, but claims that it occurred while she was pregnant with Monika. She claims that the comment was the result of her being annoyed or angered with Mr. Hudson. Ms. Cruz does not oppose the motion, stating "even though I know that's his child, I would like him to know that it is his child by DNA test." The Attorney General and the attorney for the child oppose the motion.
 I — JURISDICTION
The main thrust of the defendant's motion is to obtain a court order for a paternity test. The plaintiff mother does not oppose this. General Statutes § 46b-168 provides for court-ordered DNA testing when "the question of paternity is at issue"[1]. However, our Appellate Court has held that where a paternity judgment exists the court lacks the authority to order genetic tests unless the judgment is first opened. Cardona v.Negron, 53 Conn. App. 152, 157, 728 A.2d 1150 (1999); Anderson v. Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001).
There is no specific statute relating to opening of an adjudicated paternity judgment. McNealy v. Dancy, 13 S.M.D. 113, 122,1999 Ct. Sup. 12793
(1999). A movant must rely on provisions for opening any civil judgment, General Statutes § 52-212a and Practice Book § 17-4[2]. "These provisions allow a four month window from the date of judgment within which such a motion may be brought." In re Jonathan M.,255 Conn. 208, 237, 764 A.2d 739 (2001); Drakeford v. Ward, 15 S.M.D. ___ (Lifshitz, F.S.M., Nov. 7, 2001).
Earlier cases held that courts lacked subject matter jurisdiction to CT Page 4029 open a judgment unless the motion was filed within four months. VanMecklenberg v. Pan American World Airways, Inc., 196 Conn. 517, 5118,494 A.2d 549 (1985); Celanese Fiber v. Pic Yarns, Inc., 184 Conn. 461,465, 440 A.2d 159 (1981); Misinonile v. Misinonile, 190 Conn. 132, 134,459 A.2d 518 (1983); Handy v. Minwax Co., Inc., 46 Conn. App. 54, 56,698 A.2d 339 (1997); Ziruk v. Bedard, 45 Conn. App. 137, 139, 695 A.2d 4
(1997); Connecticut National Bank v. Oxenhandler, 30 Conn. App. 541,546-47, 621 A.2d 300, cert. denied, 225 Conn. 924, 625 A.2d 822 (1993). More recent law characterizes the statutory bar as "a limitation on the trial court's general authority to grant relief from a judgment. . . ."Yeong Gil Kim v. Magnotta, 249 Conn. 94, 103, 733 A.2d 809 (1999).
This motion to open was filed some three and a half years after the date of the original judgment. This is well beyond the time bar in the statute. "Therefore the court does not have the authority to grant the motion absent proof by the moving party of an extraordinary factor such as fraud, mistake, or duress." Drakeford v. Ward, 15 S.M.D. ___ (Lifshitz, F.S.M., Nov. 7, 2001).
Even if the defendant successfully proves that at least one of the above factors apply, he must overcome countervailing factors such as laches, estoppel and unclean hands. "[O]ne of the essential conditions for granting of such a motion is that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at trial." Stocking v. Ives, 156 Conn. 70, 73, 238 A.2d 421 (1968);Fedele v. Romero, 37 Conn. Sup. 885, 888, 441 A.2d 867 (1982).
 II — FINALITY OF JUDGMENT
Our courts favor finality in judicial decisions. Meinket v. Levinson,193 Conn. 110, 113, 414 A.2d 454 (1984); Vogel v. Vogel, 178 Conn. 358,362, 422 A.2d 271 (1979); Perkins v. Perkins, 3 Conn. App. 322, 328,487 A.2d 1117 (1985); Tirado v. Rivera, 13 S.M.D. 212, 221,1999 Ct. Sup. 15638
(1999); Joseph v. Lilburn, 14 S.M.D. ___ (2000); Yade v. Nagy, 4 S.M.D. 237 (1990); State of Florida v. Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . ." Lampson Lumber Co. v. Hoer,139 Conn. 294, 297, 93 A.2d 143 (1952); White v. Cordier, 14 S.M.D. ___,27 Conn.L.Rptr. 365 (2000); Pullen v. Cox, 9 S.M.D. 134, 137 (1995).
"The finality of judgment in family matters is crucial to our community's stability." Berry v. Berry, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. FA91-0391459,1993 Ct. Sup. 22 (Steinberg, J. January 5, 1993); Valentin v. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001); Joseph v. Lilburn, 14 S.M.D. ___ CT Page 4030 (2000). "The need for finality of judgment . . . must apply as much or more to cases where a young child for whom the passage of time which may seem short for an adult or teenager, can be almost an eternity to an infant, and work changes with substantial and irreversible effect." In reKelly S., Superior Court, juvenile matters, judicial district of Windham at Willimantic, doc. no. N90-159, 1991 Ct. Sup. 10450, 10464 (Teller,J. Dec. 5, 1991); In re Nathan and Michael G., Superior Court, juvenile matters, judicial district of Windham at Willimantic, 1993 Ct. Sup. 9953, 9967 (Brenneman, J. Nov. 17, 1993); In re Mark and Amy C., Superior Court, juvenile matters, judicial district of New London at Montville,1991 Ct. Sup. 7960, 10464 (R. Walsh, J. Sept. 24, 1991); In re JesusLugo, Superior Court, juvenile matters, judicial district of Hartford/New Britain at Plainville, 1990 Ct. Sup. 878, 887 (Brenneman, J. Aug. 24, 1990); Valentin v. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001).
The importance of the principle of finality of judgment is amplified when the parties had full opportunity originally to contest the issues.Meinket v. Levinson, 193 Conn. 110, 114, ___ A.2d ___ (1984);Monroe v. Monroe, 177 Conn. 173, 178,413 A.2d 819, appeal dismissed, 444 U.S. 801,100 S.Ct. 20, 62 L.Ed.2d 14 (1979); Mauriello v. Mauriello,1992 Ct. Sup. 4774, Superior Court, judicial district of Waterbury, doc. no. 84337 (Harrigan, J. May 29, 1992). In family matters as in criminal cases, the principal of finality of judgment must be balanced against other interests, such as assuring that no party will be deprived of constitutional rights, or achieving a factually accurate as well as a fair result. Asherman v. State, 202 Conn. 429, 521 A.2d 578 (1987).
 III — FRAUD
Notwithstanding the inclination for finality, a judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837
(1980); Gatling v. Gatling, Superior Court, judicial district of Waterbury, doc. no. 52272, 1990 Ct. Sup. 801 (Harrigan, J., Aug. 9, 1990); White v. Cordier, 14 S.M.D. 98_, 27 Conn.L.Rptr. 365,2000 Ct. Sup. 6486 (2000); McNealy v. Dancy, 13 S.M.D. 113, 119,1999 Ct. Sup. 12793 (1999).
The moving party bears a heavy burden of proof. "Fraud must be proven by `clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Gatling, supra; Dawkins v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302 (Colella, F.S.M., Oct. 29, 2001); see alsoAlaimo v. Royer, 188 Conn. 36, 39, 448 A.2d 207 (1982). The standard is also phrased "clear, precise and unequivocal evidence." Weisman v.CT Page 4031Kaspar, 233 Conn. 531, 540, 661 A.2d 530 (1995); Connell v. Colwell,214 Conn. 242, 571 A.2d 116 (1990); Alaimo, supra, 39; Lopinto v.Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981); DeLuca v. C.W. Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978); T.0. RichardsonCo. v. Brockbank, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 703826 (Sheldon, J., March 23, 1995);Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove that: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act on it; and (4) the other party did so act upon that false representation to his injury." Weisman v. Kaspar, 233 Conn. 531,539, 661 A.2d 530 (1995); Billington v. Billington, 220 Conn. 212, 217,595 A.2d 1377 (1991); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811
(1981); Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515,271 A.2d 69 (1970); Barnes v. Starr, 64 Conn. 136, 1250, 28 A. 980
(1894); Gatling, supra; Hemingway v. Jones, 15 S.M.D. ___ (Burt, F.S.M.,
Feb. 16, 2001); Anderson v. Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001); Tirado v. Rivera, 13 S.M.D. 212, 221, 1999 Ct. Sup. 15638 (1999);Pullen v. Cox, supra, 9 S.M.D. 138.
Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540-42; 36 Ill.L.Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317
(1980); Tirado v. Rivera, 13 S.M.D. 212, 221, 1999 Ct. Sup. 15638 (1999);McNealy v. Dancy, supra, 13 S.M.D. 120; Pullen v. Cox, supra, 138.
The defendant seems to base his fraud claim on the statement by the plaintiff that Monika was not his child. She claims the statement was made in anger while she was still pregnant. The defendant claims it was made a month or two after Monika was born. Either way the statement was made before the defendant filed his motion for a genetic test. There was no fraud because the plaintiff's statement upon which the defendant relies was made before the court date. Therefore, he had ample opportunity to both bring the statement to the attention of the court and to complete the genetic test. He did neither. CT Page 4032
Even if the defendant had proof that the plaintiff was sexually active at the time Monika was conceived, there is no evidence that the plaintiff claimed an exclusive relationship with the defendant. "In view of the fact that the parties were never married to each other, there is no legal obligation of either party to maintain sexual exclusivity or to divulge their sexual history to the other." Martinez v. Collins, 15 S.M.D. 1 (2001). "In the last quarter of the twentieth century after the `sexual revolution' of the `sixties, even a reasonable expectation in the context is implausible." Joseph v. Lilburn, 14 S.M.D. ___ (2000). Particularly where the plainitff made a statement casting doubt on the child's paternity, it was up to the defendant to avail himself of bringing appropriate evidence to the court. His failure to follow through on his own suspicions does not create a fraud.
 IV — MISTAKE
The defendant's pro se motion does not specifically allege mistake. However, in view of the testimony the court will consider whether the defendant has proven mistake as grounds to open the paternity judgment. "The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident or mistake." Yeong Gil Kim v. Magnotta, 49 Conn. App. 203, 209, 714 A.2d 38
(1998); Solomon v. Keiser, 22 Conn. App. 424, 577 A.2d 1103 (1990);McDonnell v. McDonnell, Superior Court, judicial district of Hartford, doc. No. FA94-0535761 (Bishop, J. February 2, 1999).
Mutual mistake has been held to exist where both parties are mutually mistaken about the same material fact. Buol Machine Co. v. Buckens,146 Conn. 639, 641, 153 A.2d 826 (1959); Dainty Rubbish service, Inc. v.Beacon Hill Association, Inc., 32 Conn. App. 530, 537, 630 A.2d 115
(1993); see also Harlach v. Metropolitan Property Liability Ins. Co.,221 Conn. 185, 190, 602 A.2d 1007 (1992). Yet in other instances, courts have held that although a party moving to open a judgment must "demonstrate that there is a good and compelling reason for the court to grant the motion . . ." the applicable statutes and practice rules ". . . [do] not contain a precise list of what the moving party must show in order to prevail. . . ." First Union National v. TDB International,22 Conn.L.Rptr. 252 (1998). A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court, acting reasonably would feel . . . bound in duty to do so." McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164,167, 140 A. 114 (1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224
(1899); Valentin v. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001). "There is no bright line standard as to what constitutes a CT Page 4033 `mistake' sufficient to confer jurisdiction on a court to open a judgment after four months." McNealy v. Dancy, 13 S.M.D. 113, 122,1999 Ct. Sup. 12793 (1999).
Unlike the provisions relating to paternity acknowledgments, there is no specific statute relating to opening an adjudicated paternity. Thus the defendant must rely on General Statutes § 52-212a. However, the court finds the language of the paternity acknowledgment act instructive in determining what constitutes a "mistake". The statute includes "evidence that he is not the father" as a "material mistake of fact". The court observes that there is no requirement of "mutual mistake". The material mistake can be mutual or unilateral. It is also significant that the clause is preceded by the word "may". Thus the amendment still does not create a bright line standard but merely allows the court to consider evidence of non-paternity among other factors.
It is difficult to consider what happened at the initial trial in this case to fall under the rubric of "mistake". The defendant's lack of diligence at trial is also a factor on the issue of mistake. DNA testing had been ordered. The defendant claims he failed to follow through because the plaintiff had left the jurisdiction and moved to Rhode Island. Even if that were true, Rhode Island is not Mongolia. Any point in Rhode Island is less than a two-hour drive to Hartford. Although she did fail to present herself to court on July 15, 1997, the record shows she did attend on May 6 and again on August 9 when the default judgment entered. It was the defendant who failed to attend court on those dates. If there was a mistake it was caused by the defendant's failure to avail himself of the DNA test timely or even within four months after trial. The court does not find mistake to be an appropriate basis to open this judgment.
 V — LACHES
The defendant's first motion to dismiss is dated March 2, 2001. The present motion was filed immediately after the first motion was dismissed. The statement of the plaintiff relied on by the defendant occurred at the latest, before the default judgment entered in August 1997. Yet three and a half years elapsed before he took any action to open the judgment. There is no plausible explanation for this delay.
The defendant "had ample opportunity to raise the paternity issue, if he so chose, within the statutory time, and incidentally at a time less prejudicial to the State and [the child]." Pullen v. Cox, 9 S.M.D. 134, 144 (1995); Angelus v. Angelus, 20 Conn.L.Rptr. 252 (1997); Perkins v.Perkins, 3 Conn. App. 322, 487 A.2d 1117 (1985). "Whether the issue "was actually litigated is immaterial in view of the necessary conclusion that CT Page 4034 there was full opportunity to litigate it and that it was adjudicated by the decree.' Jackson v. Irving Trust Co., 311 U.S. 494, 503,61 S.Ct. 326,85 L.Ed. 297 (1941)." Perkins, supra, 3 Conn. App. 327. See alsoPagani v. Davis, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 602649 (Kaplan, J., July 18, 1991);Bleidner v. Searles, 19 Conn. App. 76, 561 A.2d 954 (1989); White v.Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365 (2000).
"Laches consists of an inexcusable delay which prejudices the defendant." Bozzi v. Bozzi, 177 Conn. 232, 239, 413 A.2d 834 (1979);Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, 116 A.2d 906 (1955);Brock v. Cavanaugh, 1 Conn. App, 138, 140, 468 A.2d 1242 (1984); Lowndsv. Lownds, 41 Conn. Sup. 100, 551 A.2d 775 (1988); Lynk v. Lynk, 11 S.M.D. 233, 235; Thomas v. Ah Tau Ah Nee, 8 S.M.D. 135, 139 (1994);Samatowitz v. Samatowitz, 4 S.M.D. 30 (1990). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) Papcun v. Papcun,181 Conn. 618, 620-21, 436 A.2d 282 (1980).
In the present case it is apparent that the defendant had ample opportunity to have paternity tests prior to the entry of judgment. Furthermore, since the order was not revoked, nothing precluded the defendant from setting up the tests after the trial. He could have still scheduled and completed the test in sufficient time to move to open the judgment within the four month statutory period. He did not exercise reasonable diligence in pursuing such opportunities. His delay was not excusable and did prejudice the interests of the child and the state.Castonguay v. Plourde, 46 Conn. App. 251, 265, 699 A.2d 226, cert. denied243 Conn. 931, 701 A.2d 660 (1997); White v. Cordier, 14 S.M.D. ___,27 Conn.L.Rptr. 365, 2000 Ct. Sup. 6486 (2000); Joseph v. Lilburn, 14 S.M.D. ___ (2000). The defendant is barred from opening the paternity acknowledgment by laches.
 VI — THE INTEREST OF THE STATE OF CONNECTICUT
"There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment." White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365, (2000); McNealy v. Dancy, 13 S.M.D. 113, 115, 1999 Ct. Sup. 12793, 12795 (sub nom. Tiffany M. v. Walter D.)
(1999). "The State's financial interest is not the determining factor but one of many the court must analyze." Joseph v. Lilburn, 14 S.M.D. ___ (2000). CT Page 4035
The State has incurred direct out-of-pocket cost of public assistance paid on behalf of the child Robert. If the judgment is opened the State will be required to refund any money it collected through the support order. General Statutes § 46b-172 (c). Liability for past due support against any subsequently named putative father is limited to three years prior to the commencement of the new paternity case. In addition to its own direct fiscal interest, Connecticut "evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209, 662 A.2d 107 (1995).
 VII — THE INDEPENDENT INTEREST OF THE CHILD
Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R.,234 Conn. 209-210; Nye v. Marcus, 198 Conn. 138, 502 A.2d 869 (1985);Guille v. Guille, 196 Conn. 260, 492 A.2d 175 (1985); Salvio v. Salvio,186 Conn. 311, 441 A.2d 190 (1982); Yontef v. Yontef, 185 Conn. 275,440 A.2d 899 (1981). A child's "interest in establishing paternity is a fundamental state and federal constitutional liberty interest [which] the judicial system must afford the child an opportunity to exercise and protect. . . ." Andrews-White v. Mitchell, 15 Conn.L.Rptr. 629,1995 Ct. Sup. 12880 (McWeeny, J. Nov. 13, 1995); Taylor v. Martin, 14 S.M.D. ___, 26 Conn.L.Rptr. 404 (2000). "It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion." Pullen v. Cox, 9 S.M.D. 134, 145 (1995). Our Supreme Court has held that minor children even may appeal an order regarding their own support m the absence of a guardian ad litem, if the trial court finds that it is in their best interests to do so. Newman v. Newman,235 Conn. 82, 663 A.2d 980 (1995).
More recently courts have included the very right of the child to knowledge of his parentage among the factors to be weighed in opening a judgment. In Johnson v. Domina, Superior Court, Judicial District of Hartford, doc. No. FA88-0340848, 1998 Ct. Sup. 11005 (Sep. 24, 1998) the court, Dranginis, J., held "that the right of the child to knowledge and establishment of paternity supercedes any interest the court might have in preserving a judgment entered by default, and where clear and convincing evidence of fraud on the court is present. . . . This child's interest in preserving rights which grow from the biological father must take precedence even over a ten year old judgment of the court."
One month later, in a similar situation, Judge Dranginis opened a nine year old dissolution judgment for DNA testing. "This court has ruled that the right of the child to a conclusive determination of paternity supersedes the need for finality of judgments, and the ease with which a CT Page 4036 confirming test of paternity can now be determined, requires a conclusive finding of paternity. This child has been told that there is doubt as to her paternity. The child has a right to know for. sure whether or not the defendant in this case, who she has known as her father, is indeed her father. Her property rights are at interest here, and the ability of the parties to ascertain their responsibilities conclusively, so as to further minimize conflict over such a delicate issue, is of primary concern for the longterm well being of this child. When a debate over paternity occurs post-judgment (sic), and there is evidence of sexual infidelity which creates a doubt as to paternity, it is incumbent upon the parents to use scientific evidence to conclude the debate, and have closure for the family." Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (October 21, 1998).
It is not uniformly accepted that the interest of a minor child in determining his parentage categorically trumps traditional concern for finality of judgment. Evidence of nonpaternity even as strong as an exclusionary DNA test does not always establish a material mistake sufficient to open a paternity judgment. For example, in subsequent proceedings in the Lillibridge case, DNA testing excluded the defendant as the father of one of the two children of the marriage. The defendant then filed a "motion to modify/terminate support" which "by stipulation of the parties the court [treated] as a motion to reopen and modify judgment regarding child support." In an eleven page memorandum, the court,Devine, J., held that notwithstanding the exclusion by DNA, the defendant had not sustained his burden of proof. The court found that the defendant knew of the infidelity of his wife well before the dissolution but failed to pursue available paternity testing and continued to hold himself out as the child's father. Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (June 1, 1999).
The court is persuaded that these are issues the court must weigh and consider in determining the motion presently before the court. In this regard the court places substantial weight on the opinion of the child's counsel and guardian ad litem. Morales v. Rios, 15 S.M.D. ___,2001 Ct. Sup. 1380 (2001).
The guardian ad litem opposes opening the judgment. She concedes that there is no bonding between Monika and the defendant and that modern techniques of DNA testing would pose minimal discomfort to the child. Monika presently resides with her mother, two half-siblings and her mother's present male companion. The guardian reports this to be a stable family unit. The defendant's principal contribution to his daughter has been his child support payments. However, she points out that there is no evidence other than the one statement of the plaintiff to indicate that a different outcome would result from an opening of the judgement. Although CT Page 4037 the plaintiff admits having once stated to the defendant that he is not Monika's father she has steadfastly claimed that the statement was made in anger and that she is in fact sure that he is the father. Finally, the guardian ad litem states: "I really don't see any point to giving him another chance at this point in time. I don't think it's in the child's best interest. The child is fine as she is and she's receiving money from a gentleman who was in court and did not follow through, basically."
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the best interest considerations the court must consider. Id., 210-12; In Interest of K.J.K.,396 N.W.2d 370. 371-72 (Iowa App. 1986); In Interest of A.B.,151 Wis.2d 312, 322, 444 N.W.2d 415 (Wis.App. 1989).
 VIII — CONCLUSION
The court sees considerable merit in allowing a DNA test even at this late date. the mother does not oppose a test. The lack of bonding suggests there would be minimal trauma to Monika if the defendant is excluded. As Judge Dranginis suggested in Lillibridge the long-term interest of all of the parties might be best addressed by conclusively resolving the biological parentage once and for all. Furthermore our courts have commented on the desirability of increased utilization of genetic tests in paternity determinations[3]. Palomba v. Gray,208 Conn. 21, 36-37, 543 A.2d 1331 (1988); Joseph v. Lilburn, 14 S.M.D. ___ (2000).
This case would have been the perfect situation to order the DNA test while leaving the judgment intact. This would keep the burden where it belongs on the defendant to follow through — if he defaults again, the judgment remains in place. If the DNA tests prove he is the biological father, the issue can finally be put to rest[4] and the parties can consider appropriate steps to encourage Mr. Hudson to be father to Monika in fact rather than just in name. However, this approach is precluded by the Appellate Court's decision in Cardona v. Negron, 53 Conn. App. 152,157, 728 A.2d 1150 (1999).
In view of the absence of clear evidence of fraud or mistake, the failure of the defendant to exercise reasonable diligence, and the position of the guardian ad litem, who believes the child's best interests are served by denying the motion, the court finds, on balance, that there are more and better reasons to deny the motion than to grant it. CT Page 4038 Accordingly, the motion to open the judgment is hereby denied.
As Monika's father, it would be in her best interest that the defendant's role expand from simply a source of a support order with a legal title. In order to further this goal, both parties are ordered to participate in the parenting education program, and additionally to have at least two mediation sessions with a family relations officer. They are required to initiate both programs within sixty days of this decision. The clerk will provide the appropriate forms and materials to both parties.
BY THE COURT
Harris T. Lifshitz, Family Support Magistrate