[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The State of Connecticut commenced this paternity petition against the defendant pursuant to General Statutes § 46b-162. The named plaintiff Ailce Velez is the mother of Beija M. Torres, born July 5, 1996. The defendant was served in hand in the Town of Hartford on September 20, 1996. Both parties filed pro se appearances.
The matter came to the court for trial on December 3, 1996. Both parties were present. The transcript indicates that a general advisement of rights was given by the court.[1] The plaintiff testified under oath naming the defendant as Beija's father. The defendant Torres was canvassed by the Assistant Attorney General regarding his right to counsel, his right to genetic tests and his right to trial. He specifically waived these rights and admitted under oath to paternity. Thereafter, the court, Ginsberg, F.S.M., entered judgment that the defendant Torres was Beija's father.[2] The court found that the parties were residing together as an intact family. Accordingly, no current support was ordered, although the defendant was ordered to make restitution on a small State arrearage.
Within a year of the court hearing, the parties separated. Although they maintained a friendship for a period of time, they no longer maintained a family unit. Ms. Velez eventually married another person and is now known as Alice Morella. In May 2001, she filed a pro se motion seeking a current support order. A hearing was held before the undersigned on August 17, 2001. Both parties attended the hearing. The court ordered the defendant to pay $61.62 per week in current support plus $8.38 on the arrearage. The court also modified the medical insurance orders to comply with the present child support guidelines and also established a day care contribution.
The next court activity was the filing of the present motion to open the paternity judgment, which is dated April 30, 2002 and served on the CT Page 16613-j plaintiff by a State Marshal on May 5, 2002. Attorney Virginia B. Street was appointed as guardian ad litem for the child Beija and Attorney Sheila S. Iverson was appointed as her attorney. The motion was continued to the special assignment list. Both parties appeared and a full contested hearing was held.
The defendant's motion states: "On 12/3/96 — Judgment of Paternity was entered, I wanted genetic testing however I was told it was too expensive. I always had doubts about the child, recently I received a phone call telling me I wasn't the father. I would like to request genetic testing, I don't wasn't to have any doubts." In his testimony, the defendant stated that he wanted a "blood test" at the outset but was told by the plaintiff that it was too expensive and unnecessary. He claims he "didn't understand English" and that the plaintiff "always lied that way." He further claims that a few months prior to his filing the motion, the plaintiff told him he was not the father and that her present husband was going to adopt Beija.[3]
The plaintiff states that she believed the defendant was the child's father during her pregnancy and for a time after the birth. However, some six or seven months afterward, she noticed "physical changes" which convinced her that Beija was the issue of another relationship she recalls having two or three weeks apart from that with the defendant. She took no action because she claims the defendant "used to say a lot that even though he knows he was not the father, he was not gonna do anything about it because he loved her." She believes the biological father is a man named Simon Beale, but does not know his whereabouts. She does not oppose this motion and wishes her husband to adopt Beija.[4]
The Attorney General and the attorney for the child oppose the motion. The child's guardian ad liter stated: "Certainly . . . I would say the child should know her biological parents. However, I see no benefit to the child in revoking this paternity judgment at this time because there is no other father available to this child, and the child would have no support. And the child would also lose her relationship that she has with Mr. Torres' family. So I would not support his motion to open judgment and revoke paternity."
 I — JURISDICTION
The main thrust of the defendant's motion is to obtain a court order for a paternity test. The plaintiff mother does not oppose this. General Statutes § 46b-168 provides for court ordered DNA testing when "the question of paternity is at issue".[5] However, our Appellate Court has held that where a paternity judgment exists the court lacks the authority CT Page 16613-k to order genetic tests unless the judgment is first opened. Cardona v.Negron, 53 Conn. App. 152, 157, 728 A.2d 1150 (1999); Anderson v.Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001).
There is no specific statute relating to opening of an adjudicated paternity judgment. McNealy v. Dancy, 13 S.M.D. 113, 122,1999 Ct. Sup. 12793 (1999). A movant must rely on provisions for opening any civil judgment, General Statutes § 52-212a and Practice Book § 17-4.[6] "These provisions allow a four month window from the date of judgment within which such a motion may be brought." In reJonathan M, 255 Conn. 208, 237, 764 A.2d 739 (2001); Drakeford v. Ward, 15 S.M.D. ___ (Lifshitz, F.S.M., Nov. 7, 2001).
Earlier cases held that courts lacked subject matter jurisdiction to open a judgment unless the motion was filed within four months. VanMecklenberg v. Pan American World Airways, Inc., 196 Conn. 517, 5118,494 A.2d 549 (1985); Celanese Fiber v. Pic Yarns, Inc., 184 Conn. 461,465, 440 A.2d 159 (1981); Misinonile v. Misinonile, 190 Conn. 132, 134,459 A.2d 518 (1983); Handy v. Minwax Co., Inc., 46 Conn. App. 54, 56,698 A.2d 339 (1997); Ziruk v. Bedard, 45 Conn. App. 137, 139, 695 A.2d 4
(1997); Connecticut National Bank v. Oxenhandler, 30 Conn. App. 541,546-47, 621 A.2d 300, cert. denied, 225 Conn. 924, 625 A.2d 822 (1993). More recent law characterizes the statutory bar as "a limitation on the trial court's general authority to grant relief from a judgment. . . ."Yeong Gil Kim v. Magnotta, 249 Conn. 94, 103, 733 A.2d 809 (1999).
This motion to open was filed more than five years after the date of the original judgment. This is well beyond the time bar in the statute. "Therefore the court does not have the authority to grant the motion absent proof by the moving party of an extraordinary factor such as fraud, mistake, or duress." Drakeford v. Ward, 15 S.M.D. ___ (Lifshitz, F.S.M., Nov. 7, 2001).
Even if the defendant successfully proves that at least one of the above factors applies, he must overcome countervailing factors such as laches, estoppel and unclean hands. "[O]ne of the essential conditions for granting of such a motion is that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at trial." Stocking v. Ives, 156 Conn. 70, 73, 238 A.2d 421 (1968);Fedele v. Romero, 37 Conn. Sup. 885, 888, 441 A.2d 867 (1982).
 II — FINALITY OF JUDGMENT
Our courts favor finality in judicial decisions. Meinket v. Levinson,193 Conn. 110, 113, 414 A.2d 454 (1984); Vogel v. Vogel, 178 Conn. 358, CT Page 16613-l 362, 422 A.2d 271 (1979); Perkins v. Perkins, 3 Conn. App. 322, 328,487 A.2d 1117 (1985); Tirado v. Rivera, 13 S.M.D. 212, 221,1999 Ct. Sup. 15638 (1999); Joseph v. Lilburn, 14 S.M.D. ___ (2000); Yade v. Nagy, 4 S.M.D. 237 (1990); State of Florida v.Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . ."Lampson Lumber Co. v. Hoer, 139 Conn. 294, 297, 93 A.2d 143 (1952); Whitev. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365 (2000); Pullen v. Cox, 9 S.M.D. 134, 137 (1995).
"The finality of judgment in family matters is crucial to our community's stability." Berry v. Berry, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. FA91-0391459,1993 Ct. Sup. 22 (Steinberg, J. January 5, 1993); Valentin v.Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001); Joseph v.Lilburn, 14 S.M.D. ___ (2000). "The need for finality of judgment . . . must apply as much or more to cases where a young child for whom the passage of time which may seem short for an adult or teenager, can be almost an eternity to an infant, and work changes with substantial and irreversible effect." In re Kelly S., Superior Court, juvenile matters, judicial district of Windham at Willimantic, doc. no. N90-159,1991 Ct. Sup. 10450, 10464 (Teller, J. Dec. 5, 1991);In re Nathan and Michael G., Superior Court, juvenile matters, judicial district of Windham at Willimantic,1993 Ct. Sup. 9953, 9967 (Brenneman, J. Nov. 17, 1993); In re Mark and Amy C., Superior Court, juvenile matters, judicial district of New London at Montville, 1991 Ct. Sup. 7960, 10464 (R. Walsh, J. Sept. 24, 1991); In re Jesus Lugo, Superior Court, juvenile matters, judicial district of Hartford/New Britain at Plainville, 1990 Ct. Sup. 878,887 (Brenneman, J. Aug. 24, 1990); Valentin v. Olivero, 13 S.M.D. ___ (Alvord, F.S.M., June 11, 2001).
The importance of the principle of finality of judgment is amplified when the parties had full opportunity originally to contest the issues.Meinket v. Levinson, 193 Conn. 110, 114, A.2d (1984); Monroe v. Monroe,177 Conn. 173, 178, 413 A.2d 819, appeal dismissed, 444 U.S. 801,100 S.Ct. 20, 62 L.Ed.2d 14 (1979); Mauriello v. Mauriello,1992 Ct. Sup. 4774, Superior Court, judicial district of Waterbury, doc. no. 84337 (Harrigan, J., May 29, 1992). The principal of finality of judgment must be balanced against other interests, such as assuring that no party will be deprived of constitutional rights, or achieving a factually accurate as well as a fair result. Asherman v. State, CT Page 16613-m202 Conn. 429, 521 A.2d 578 (1987).
 III — FRAUD
A judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129,131, 429 A.2d 837 (1980); Gatling v. Gatling, Superior Court, judicial district of Waterbury, doc. no. 52272, 1990 Ct. Sup. 801
(Harrigan, J., Aug. 9, 1990); White v. Cordier, 14 S.M.D. 98, ___,27 Conn.L.Rptr. 365, 2000 Ct. Sup. 6486 (2000); McNealyv. Dancy, 13 S.M.D. 113, 119, 1999 Ct. Sup. 12793
(1999).
The moving party bears a heavy burden of proof. "Fraud must be proven by "clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Gatling, supra; Dawkins v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302 (Colella, F.S.M., Oct. 29, 2001); see alsoAlaimo v. Royer, 188 Conn. 36, 39, 448 A.2d 207 (1982). The standard is also phrased "clear, precise and unequivocal evidence." Weisman v.Kaspar, 233 Conn. 531, 540, 661 A.2d 530 (1995); Connell v. Colwell,214 Conn. 242, 571 A.2d 116 (1990); Alaimo, supra, 39; Lopinto v.Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981); DeLuca v. C. W.Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978);T.O. Richardson Co. v. Brockbank, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 703826 (Sheldon, J., March 23, 1995); Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove that: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act on it; and (4) the other party did so act upon that false representation to his injury." Weisman v. Kaspar, 233 Conn. 531,539, 661 A.2d 530 (1995); Billington v. Billington, 220 Conn. 212, 217,595 A.2d 1377 (1991); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811
(1981); Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515,271 A.2d 69 (1970); Barnes v. Starr, 64 Conn. 136, 1250, 28 A. 980
(1894); Gatling, supra; Hemingway v. Jones, 15 S.M.D. ___ (Burt, F.S.M., Feb. 16, 2001); Anderson v. Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001); Tirado v. Rivera, 13 S.M.D. 212, 221,1999 Ct. Sup. 15638 (1999); Pullen v. Cox, supra, 9 S.M.D. 138.
Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original CT Page 16613-n action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540-42; 36 Ill.L.Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317
(1980); Cruz v. Hudson, 16 S.M.D. ___,2002 Ct. Sup. 4027 (2002); Tirado v. Rivera, 13 S.M.D. 212, 221,1999 Ct. Sup. 15638 (1999); McNealy v. Dancy, supra, 13 S.M.D. 120;Pullen v. Cox, supra, 138.
The court is not persuaded that the plaintiff committed fraud so as to induce the defendant to waive genetic tests and admit paternity. There is no claim that the plaintiff specifically pledged that her sexual relationship with the defendant was exclusive. Even if his claim is believed that the plaintiff told him the genetic test was too expensive, on the date of the hearing he could have easily ascertained the actual cost of the tests and that he could apply for State payment of those costs if he claimed indigency. The defendant confesses that he had suspicions all along. The plaintiff's claim that he took no action because he had become attached to the child is at least as credible as the shopping list of excuses proffered by the defendant as to why he failed to act until now.
"In view of the fact that the parties were never married to each other, there is no legal obligation of either party to maintain sexual exclusivity or to divulge their sexual history to the other." Martinezv. Collins, 15 S.M.D. 1 (2001). "In the last quarter of the twentieth century after the `sexual revolution' of the "sixties, even a reasonable expectation in the context is implausible." Cruz v. Hudson, 16 S.M.D ___2002 Ct. Sup. 4027 (2002); Joseph v. Lilburn, 14 S.M.D. ___ (2000). Particularly where the defendant harbored long-standing doubt on the child's paternity, it was up to the defendant to produce appropriate evidence for the court. His failure to follow through on his own suspicions does not create a fraud.
 IV — MISTAKE
Courts have held that although a party moving to open a judgment must "demonstrate that there is a good and compelling reason for the court to grant the motion . . ." the applicable statutes and practice rules ". . . [do] not contain a precise list of what the moving party must show in order to prevail. . . ." First Union National v. TDB International, 22 CT Page 16613-o Conn.L.Rptr. 252 (1998). A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court, acting reasonably would feel . . . bound in duty to do so." McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164,167, 140 A. 114 (1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224
(1899); Valentin v. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001). "There is no bright line standard as to what constitutes a "mistake' sufficient to confer jurisdiction on a court to open a judgment after four months." McNealy v. Dancy, 13 S.M.D. 113, 122,1999 Ct. Sup. 12793 (1999).
Mutual mistake has been held to exist where both parties are mutually mistaken about the same material fact. Buol Machine Co. v. Buckens,146 Conn. 639, 641, 153 A.2d 826 (1959); Dainty Rubbish service, Inc. v.Beacon Hill Association, Inc., 32 Conn. App. 530, 537, 630 A.2d 115
(1993); see also Harlach v. Metropolitan Property Liability Ins.Co., 221 Conn. 185, 190, 602 A.2d 1007 (1992). There is no requirement of "mutual mistake". The material mistake can be mutual or unilateral. The language of the paternity acknowledgment act is instructive in determining what constitutes a "mistake". The statute includes "evidence that he is not the father" as a "material mistake of fact". It is also significant that the clause is preceded by the word "may". The provision does not create a bright line standard but merely allows the court to consider evidence of non-paternity among other factors.
It is difficult to consider what happened at the initial trial in this case to fall under the rubric of "mistake". The defendant's lack of diligence at trial is also a factor on the issue of mistake. The record clearly indicates that the Assistant Attorney General went over all of the defendant's rights including his right to genetic tests. The defendant explicitly waived genetic tests. If there was a mistake it was caused by the defendant's failure to avail himself of the DNA test timely or even within four months after trial.
The defendant's claim that he was confused by a language barrier is not convincing. Although he did utilize the offices of a Spanish language interpreter at the hearing on his motion to open, it is clear from the record of the original trial, as well as several colloquies and outburst in English at the hearing on this motion, that the defendant adequately understands English. The court does not find mistake to be an appropriate basis to open this judgment.
 V — LACHES
More than five years elapsed before the defendant took any formal CT Page 16613-p action to open the judgment. There is no plausible explanation for this delay.
The defendant "had ample opportunity to raise the paternity issue, if he so chose, within the statutory time, and incidentally at a time less prejudicial to the State and [the child]." Pullen v. Cox, 9 S.M.D. 134, 144 (1995); Angelus v. Angelus, 20 Conn.L.Rptr. 252 (1997); Perkins v.Perkins, 3 Conn. App. 322, 487 A.2d 1117 (1985). "Whether the issue "was actually litigated is immaterial in view of the necessary conclusion that there was full opportunity to litigate it and that it was adjudicated by the decree.' Jackson v. Irving Trust Co., 311 U.S. 494, 503,61 S.Ct. 326,85 L.Ed. 297 (1941)." Perkins, supra, 3 Conn. App. 327. See alsoPagani v. Davis, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. 602649 (Kaplan, J., July 18, 1991);Bleidner v. Searles, 19 Conn. App. 76, 561 A.2d 954 (1989); White v.Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365 (2000).
"Laches consists of an inexcusable delay which prejudices the defendant." Bozzi v. Bozzi, 177 Conn. 232, 239, 413 A.2d 834 (1979);Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, 116 A.2d 906 (1955);Brock v. Cavanaugh, 1 Conn. App, 138, 140, 468 A.2d 1242 (1984); Lowndsv. Lownds, 41 Conn. Sup. 100, 551 A.2d 775 (1988); Lynk v. Lynk, 11 S.M.D. 233, 235; Thomas v. Ah Tau Ah Nee, 8 S.M.D. 135, 139 (1994);Samatowitz v. Samatowitz, 4 S.M.D. 30 (1990). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) Papcun v. Papcun,181 Conn. 618, 620-21, 436 A.2d 282 (1980).
In the present case it is apparent that the defendant had sufficient opportunity to have paternity tests prior to the entry of judgment. It is apparent that he had suspicions all along as to whether he was the child's biological father. Yet his response was limited to discussions with the plaintiff. He could have moved to open the judgment within the four month statutory period and then pursued genetic tests. He did not exercise reasonable diligence in pursuing such opportunities.
His delay was not excusable and did prejudice the interests of the child and the state. Castonguay v. Plourde, 46 Conn. App. 251, 265,699 A.2d 226, cert. denied 243 Conn. 931, 701 A.2d 660 (1997); White v.Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365,2000 Ct. Sup. 6486 (2000); Joseph v. Lilburn, 14 S.M.D. ___ (2000). The CT Page 16613-q defendant is barred from opening the paternity acknowledgment by laches.
VI — THE INTEREST OF THE STATE OF CONNECTICUT
Although nominal in this case, the State did incur direct out-of-pocket costs of public assistance paid on behalf of the child Beija. If the judgment is opened the State will be required to refund any money it collected through the support order. General Statutes § 46b-172 (c). Liability for past due support against any subsequently named putative father is limited to three years prior to the commencement of the new paternity case, which will preclude recoupment of the public assistance paid. In addition to its own direct fiscal interest, Connecticut "evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995).
VII — THE INDEPENDENT INTEREST OF THE CHILD
A child's "interest in establishing paternity is a fundamental state and federal constitutional liberty interest [which] the judicial system must afford the child an opportunity to exercise and protect. . . ."Andrews-White v. Mitchell, 15 Conn.L.Rptr. 629,1995 Ct. Sup. 12880 (McWeeny, J. Nov. 13, 1995); Taylor v. Martin, 14 S.M.D. ___ 26 Conn.L.Rptr. 404 (2000). Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R., supra, 234 Conn. 209-210; Nye v. Marcus,198 Conn. 138, 502 A.2d 869 (1985); Guille v. Guille, 196 Conn. 260,492 A.2d 175 (1985); Salvio v. Salvio, 186 Conn. 311, 441 A.2d 190
(1982); Yontef v. Yontef, 185 Conn. 275, 440 A.2d 899 (1981). "It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion." Pullen v. Cox, 9 S.M.D. 134, 145 (1995). See also Newman v. Newman, 235 Conn. 82, 663 A.2d 980 (1995).
More recently courts have included the very right of the child to knowledge of his parentage among the factors to be weighed in opening a judgment. In Johnson v. Domina, Superior Court, Judicial District of Hartford, doc. No. FA88-0340848,1998 Ct. Sup. 11005 (Sep. 24, 1998) the court, Dranginis, J., held "that the right of the child to knowledge and establishment of paternity supercedes any interest the court might have in preserving a judgment entered by default, and where clear and convincing evidence of fraud on the court is present. . . . This child's interest in preserving rights which grow from the biological father must take precedence even over a ten year old judgment of the court." CT Page 16613-r
One month later, in a similar situation, Judge Dranginis opened a nine year old dissolution judgment for DNA testing. "This court has ruled that the right of the child to a conclusive determination of paternity supersedes the need for finality of judgments, and the ease with which a confirming test of paternity can now be determined, requires a conclusive finding of paternity. This child has been told that there is doubt as to her paternity. The child has a right to know for sure whether or not the defendant in this case, who she has known as her father, is indeed her father. Her property rights are at interest here, and the ability of the parties to ascertain their responsibilities conclusively, so as to further minimize conflict over such a delicate issue, is of primary concern for the long-term well being of this child. When a debate over paternity occurs post-judgment (sic), and there is evidence of sexual infidelity which creates a doubt as to paternity, it is incumbent upon the parents to use scientific evidence to conclude the debate, and have closure for the family." Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (October 21, 1998).
It is not uniformly accepted that the interest of a minor child in determining his parentage categorically trumps traditional concern for finality of judgment. Evidence of nonpaternity even as strong as an exclusionary DNA test does not always establish a material mistake sufficient to open a paternity judgment. For example, in subsequent proceedings in the Lillibridge case, DNA testing excluded the defendant as the father of one of the two children of the marriage. The defendant then filed a "motion to modify/terminate support" which "by stipulation of the parties the court [treated] as a motion to reopen and modify judgment regarding child support." In an eleven page memorandum, the court,Devine, J., held that notwithstanding the exclusion by DNA, the defendant had not sustained his burden of proof. The court found that the defendant knew of the infidelity of his wife well before the dissolution but failed to pursue available paternity testing and continued to hold himself out as the child's father. Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (June 1, 1999).
The court is persuaded that these are issues the court must weigh and consider in determining the motion presently before the court. In this regard the court places substantial weight on the opinion of the child's counsel and guardian ad litem. Morales v. Rios, 15 S.M.D. ___,2001 Ct. Sup. 1380 (2001).
The guardian ad litem and the child's attorney both oppose opening the judgment. The guardian ad liter points to the continuing father-daughter relationship with the defendant as well as the relationship with the defendant's family. There is no doubt that this relationship has been CT Page 16613-s chilled by the suspicions of Mr. Torres and the confirmation by Ms. Velez that she had another liaison which could have resulted in the conception of Beija. It is significant that both the plaintiff and the defendant now favor a severing of Mr. Torres' relationship with Beija. The plaintiff suggests that her present husband might ultimately adopt Beija. However, a termination of the defendant's parental rights and subsequent adoption is not properly the consideration of this court. Regardless of the outcome of this motion, such action may be initiated before the proper Probate Court, which will apply the standards appropriate to such a petition. In re Bruce R., 234 Conn. 194, 209, 662 A.2d 107 (1995).
Both parents base their present opinions on their observations of Beija's physical features. This does not amount to clear and convincing evidence. No DNA evidence has been proffered and, as discussed earlier, the court is without authority to order genetic tests. There is little to suggest confidence in Ms. Velez' present allegation that Simon Beale is Beija's true father. Even if the claim were fully credible she is unable to produce Mr. Beale and his whereabouts are unknown.[7]
In hindsight it would have been far better had Mr. Torres availed himself of DNA test back in 1996 when he had that opportunity through the court. He says he relied on Ms. Velez, and he did so because he loved her. And now, the position that both parties take with regard to undoing the paternity judgment seems more connected to their falling out of love than the best interests of their child.[8] Additionally, it is noteworthy that the defendant took no action to challenge paternity until after a substantial upward modification of the child support order.
Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the best interest considerations the court must consider. Id., 210-12; In Interest of K.J.K.,396 N.W.2d 370. 371-72 (Iowa App. 1986); In Interest of A.B.,151 Wis.2d 312, 322, 444 N.W.2d 415 (Wis.App. 1989).
The existing paternity judgment at least assures continuing child support for Beija. If the judgment is opened there is no reason to believe that this financial support, or whatever aspects of fatherhood Mr. Torres and his family choose to continue, would ever be replaced. The child's attorney argues that Mr. Torres waived his rights long ago and should be held to that now. The guardian ad litem sees no benefit to Beija in disrupting the paternity judgment now. The court agrees with both. CT Page 16613-t
 VIII — CONCLUSION
While our courts have commented on the desirability of increased utilization of genetic tests in paternity determinations[9], Palombav. Gray, 208 Conn. 21, 36-37, 543 A.2d 1331 (1988); Joseph v. Lilburn, 14 S.M.D. ___ (2000), once a paternity judgment is entered, this approach is precluded by the Appellate Court's decision in Cardona v. Negron,53 Conn. App. 152, 157, 728 A.2d 1150 (1999).
In view of the absence of clear evidence of fraud or mistake, the failure of the defendant to exercise reasonable diligence, and the position of the guardian ad litem, who believes the child's best interests are served by denying the motion, the court finds, on balance, that there are better reasons to deny the motion than to grant it. Accordingly, the motion to open the judgment is hereby denied.
BY THE COURT
 ___________________ Harris T. Lifshitz Family Support Magistrate